852 A.2d 217 (2004)
371 N.J. Super. 103
IVY HILL PARK, SECTION III, INC., Plaintiff-Respondent,
v.
Zaza ABUTIDZE & Lali Giorgadze, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted March 1, 2004.
Decided July 9, 2004.
*219 Essex-Newark Legal Services, attorneys for appellants (Cesar E. Torres, Newark, on the brief).
Respondent has not filed a brief.
Before Judges FALL, PARRILLO and HOENS.
*218 The opinion of the court was delivered by HOENS, J.A.D.
Defendants Zaza Abutidze and Lali Giorgadze appeal from the May 28, 2003 order of the Law Division, Special Civil Part, which reinstated a judgment of possession and warrant of removal in favor of their landlord, plaintiff Ivy Hill Park, Section III, Inc. As a part of that order, and for reasons expressed on the record on May 21, 2003, the judge denied defendants' motion to vacate the court's earlier judgment of possession or, in the alternative, to dismiss the complaint for possession on jurisdictional grounds. We reverse.
The questions raised on appeal call upon us to address issues left open by our Supreme Court in its seminal decision in A.P. Development Corp. v. Band, 113 N.J. 485, 550 A.2d 1220 (1988), and to interpret the meaning of the statutory requirements relating to notice in the context of landlord-tenant matters. While the record on appeal is rather sparse, the facts and the procedural history relevant to the issues we here address are as follows.
Defendants have been tenants in the subject premises since 1997. Defendant Abutidze asserts that she was injured in August 2000 and was unable to continue her employment as a result of which she and her co-defendant fell behind in their payment of rent. Documents included in the record on appeal demonstrate that from at least January 1, 2002, onward, the tenants were almost always late in paying their rent, often incurring late fees as authorized by the terms of their lease. On August 29, 2002, the landlord sent a Notice to Cease, advising the tenants that their habitual late payment of the rent was a ground for their eviction, N.J.S.A. 2A:18-61.1(j), and demanding that the tenants cease paying the rent late or face eviction. It is undisputed that this notice was sent to the tenants at the address of the rented premises by certified mail, return receipt requested, and by regular mail. The certified mail was returned to the landlord, bearing a notation that delivery had been attempted three times without success and that it was therefore being returned as unclaimed. The landlord testified that the letter sent at the same time by regular mail was not returned. As of the date of the Notice to Cease, the tenants owed $1,446.86 in back rent and late fees.
The record demonstrates that in September 2002 the tenants paid a total of $2,000 to be applied to the back rent and fees and to the rent due for September, leaving a balance then due of $37.48. The record further reflects that after September 2002, unpaid rent and late fees continued to accrue until February 3, 2003, when *220 another payment of $1,300 toward the accrued arrearages was made.[1] On February 11, 2003, the landlord personally served Giorgadze with a Notice to Quit and demand for possession of the premises on or before March 31, 2003 based upon the continued late payment of the rent. That notice purported to terminate the tenancy as of March 31, 2003 on that ground. The record reflects that, by the time of the service of the Notice to Quit, the tenants owed $1,505.58 in back rent and late fees.
Notwithstanding the service of the Notice to Quit and the landlord's demand that the tenant vacate the premises for habitual late payment of rent as of March 31, 2003, prior to that deadline, the landlord filed a complaint in the Special Civil Part seeking to evict the tenants based on unpaid rent for December, January and February alone. N.J.S.A. 2A:18-61.1(a). Trial on that complaint was scheduled for March 25, 2003. The tenants assert, and the landlord does not deny, that both prior to and again on the day fixed for trial, the tenants appeared and tendered the full amount of the rent then due, but that the landlord, seeking to preserve its rights, insisted that even full payment would not suffice to void the termination of the tenancy in accordance with the Notice to Quit.
Because the tenants were concerned that they might need the funds to secure a new place to live and because they were not aware that they could contest the matter in court, they declined to give the funds to the landlord if they could not thereby avoid the consequences of the Notice to Quit. For reasons not entirely apparent, the court records indicate that the disposition of the matter on that date was "default by consent." Three days later, the landlord, having secured the judgment of possession by default, filed a certification of rent due[2] and a warrant of removal issued thereafter. The warrant of removal was duly served on the tenants and ordered them to vacate the premises by April 15, 2003.
On April 14, 2003, the tenants applied for and were granted an order to show cause and stay of execution of the warrant of removal with a return date of April 21, 2003, contingent upon payment into court of $500, a condition with which they complied. The April 21, 2003 return date was adjourned because a translator was not available. On April 30, 2003, the tenants, represented by counsel, appeared. At the beginning of the hearing, the landlord's attorney requested an opportunity to amend the complaint to assert additional statutory grounds for eviction, including habitual late payment of rent and holdover status because by then the March 31, 2003 termination date set forth in the Notice to Quit had passed. In response, the tenants moved to have the March 25, 2003 judgment of possession vacated and the complaint dismissed in light of the timely tender of all sums due prior to the date for trial. See N.J.S.A. 2A:18-55. The tenants asserted that they had in the interim secured rental assistance and had in their *221 possession a check from the Essex County Division of Welfare which was sufficient to pay all of the rent then due and to prepay a portion of the rent that would be due for April 2003.
During the colloquy with the court, the landlord requested an adjournment of the matter in order to permit it to amend the complaint to assert the additional causes of action to support eviction, and rejected the tendered payment for strategic reasons.[3] The landlord sought to have its arguments relating to the habitual late payment of rent and the effectiveness of the termination of the lease through the Notice to Quit determined in advance of a hearing on its complaint for eviction based on the alternate ground of failure to pay rent. Counsel for the tenants consented to the adjournment and to the proposed amendment of the complaint and trial was rescheduled for May 21, 2003.
On April 30, 2003, the landlord filed an amended complaint with two counts. The first count of the amended complaint asserted that the tenants had habitually paid the rent late, had been duly served with a Notice to Cease and a Notice to Quit and had failed to vacate the premises as demanded in the Notice to Quit. The second count of the amended complaint asserted that the tenants had failed to pay rent due for all or part of the months of January, February and March 2003 and that they had failed to pay a like sum for use and occupancy of the premises in April 2003 following the Notice to Quit's termination of the tenancy.
On May 21, 2003, counsel and the parties appeared for the hearing in the summary dispossess proceeding. At the start of the hearing, counsel for the tenants moved to dismiss the amended complaint, asserting that the landlord's failure to reiterate its objection to the late rental payments following service of the Notice to Cease prevented the landlord from relying upon the continued late payments thereafter as a ground for its Notice to Quit. The trial judge denied that application. He determined that there was no notice requirement imposed upon the landlord other than the statutory requirement of service of a Notice to Cease, followed by two further late payments, and service of a Notice to Quit. After the judge denied the tenants' dismissal motion, the matter proceeded. A representative of the landlord and both of the tenants testified. Much of the testimony at the proceeding focused on the contention of the tenants that they did not actually receive the Notice to Cease and thus could not be charged with knowledge of its contents.
Respecting the question of service, the landlord's representative produced a copy of the Notice to Cease that had been sent to the tenants. He testified that the notice was sent by certified mail, return receipt requested and, simultaneously, by regular mail. The envelope that had contained the copy that was sent by certified mail was produced at trial. It bore markings that demonstrated that the postal authorities had tried on three occasions to deliver it without success as a result of which it had been returned as "unclaimed." The landlord's representative testified that the copy sent to the tenants at the same time by regular mail, however, was not returned. In response, the tenants testified that they were familiar with Post Office notifications *222 relating to certified mail, that they had not received any notices relating to this certified letter, that they had never received the Notice to Cease through regular mail delivery and that they were unaware of the landlord's demand that they cease late payment of the rent or face eviction. They further contended that, even if they had received the Notice to Cease, they should not be evicted because their late payment was neither willful nor intentional, but was the unfortunate consequence of illness and unemployment.
The judge, after considering the testimony, determined that service of the Notice to Cease by simultaneous certified and regular mail was sufficient to comply with the requirement of the statute. While conceding that the purpose of the Notice to Cease is to give a tenant the opportunity to cure the forbidden behavior, he concluded that the statute only requires a reasonable effort to provide the notice to the tenant and that using certified and regular mail was sufficient for that purpose. Noting that there is no requirement that the landlord prove actual receipt of the notice by the tenant, the judge declined to read that level of proof into the statute.
Second, the judge rejected the tenant's argument, based on the Supreme Court's decision in A.P. Development, supra, that the Notice to Cease is ineffective in the absence of a monthly reiteration of the ground set forth in the original notice. Finally, the judge rejected the arguments raised by the tenants concerning the inequities of eviction in light of their loss of employment and their ill health. The order entering judgment of possession in favor of the landlord included a provision staying execution of the warrant of removal pending this appeal.
On appeal, the tenants raise the following arguments:
POINT A.
ABSENT A FINDING THAT DEFENDANT-TENANT ACTUALLY RECEIVED THE REQUIRED STATUTORY NOTICE TO CEASE, THE TRIAL COURT MAY NOT ENTER A JUDGMENT REMOVING A RESIDENTIAL TENANT FROM PREMISES COVERED BY THE ACT.
1. THE ANTI-EVICTION ACT REQUIRES THAT THE NOTICE TO CEASE BE ACTUALLY RECEIVED BY THE TENANT.
2. IF ACTUAL RECEIPT OF THE STATUTORY NOTICE TO CEASE IS NOT REQUIRED UNDER THE ACT, DEFENDANTS REBUTTED THE PRESUMPTION OF SERVICE AND THE COMPLAINT SHOULD BE DISMISSED.
POINT B.
THE TRIAL COURT LACKED JURISDICTION TO EVICT FOR HABITUAL LATE PAYMENT OF RENT WHERE, AFTER A NOTICE TO CEASE, THE TENANT CONTINUES TO PAY RENTS LATE, BUT THE LANDLORD FAILS TO PROVIDE CLEAR AND CONTINUING NOTICE TO THE TENANT THAT THE NOTICE TO CEASE REMAINS IN EFFECT AND THAT LATE PAYMENTS WILL LEAD TO EVICTION AS REQUIRED BY A.P. DEVELOPMENT CORP. v. BAND.

1. IN ADDITION TO A NOTICE TO CEASE, NEW JERSEY LAW CLEARLY IMPOSES ONGOING NOTICE REQUIREMENTS ON A LANDLORD ACCEPTING RENTS TO ESTABLISH THAT A TENANT'S LATE PAYMENT OF RENT IS HABITUAL.
2. PLAINTIFF FAILED TO GIVE SUITABLE AND ADEQUATE NOTICE *223 THAT THE NOTICE TO CEASE REMAINED IN EFFECT AND CONTINUED LATE PAYMENT WOULD LEAD TO EVICTION FOR HABITUAL LATE PAYMENT OF RENT.
3. THE TRIAL COURT ERRED BY HOLDING THAT A.P. DEVELOPMENT DID NOT REQUIRE ADDITIONAL NOTICES THAT THE NOTICE TO CEASE REMAINED IN EFFECT AND THAT A TENANT COULD BE EVICTED IF LATE PAYMENTS CONTINUED.
POINT C.
THE TRIAL COURT ERRED AND SHOULD BE REVERSED BECAUSE IT DID NOT CONSIDER WHETHER THE CIRCUMSTANCES SURROUNDING DEFENDANTS' LATE PAYMENT OF RENTS EQUITABLY CONSTITUTES HABITUAL LATE PAYMENT OF RENT FOR PURPOSES OF THE ANTI-EVICTION ACT, N.J.S.A. 2A:18-61.1(j).
We have considered these issues in light of the record, the applicable legal precedents and the arguments raised by counsel for the tenants. We have concluded that the trial judge erred in his interpretation of the requirements of A.P. Development, supra, and we reverse for that reason. While we find that the other arguments raised on appeal are unpersuasive, for the sake of completeness, we address all of the points raised in the order presented by the tenants.
First, the tenants contend that the statute requires that the Notice to Cease be actually received by the tenant and that the landlord prove actual receipt of that notice as a prerequisite to eviction. In support of this argument, the tenants argue that the purpose of the Notice to Cease is to provide the tenant with an opportunity to correct the behavior that would otherwise support an eviction and that this purpose would be frustrated were actual notice not required. Second, the tenants contend that the court's reading of the statute requiring only delivery of the notice by means reasonably calculated to achieve receipt at most created a rebuttable presumption that the testimony of the tenants should have sufficed to overcome. We disagree with both of these arguments.
In analyzing the tenants' argument that actual notice is required, the trial judge pointed out that, unlike the statute describing the Notice to Quit, N.J.S.A. 2A:18-61.2, none of the provisions that refer to the Notice to Cease defines in any manner how service is to be accomplished. See N.J.S.A. 2A:18-61.1. In fact, as the trial judge also noted, the statute relating to the service of the Notice to Quit itself is broad. It permits personal service on the tenant or on a suitable adult at the place of residence, or, alternatively, service by simultaneous certified and regular mail. See N.J.S.A. 2A:18-61.2; see Tower Management Corp. v. Podesta, 226 N.J.Super. 300, 304-05, 544 A.2d 389 (App.Div.1988). While the purpose of the Notice to Cease is to give the tenant the opportunity to stop engaging in the behavior that violates the lease, as the judge concluded, the tenant already knows when his or her rent is due and knows that habitually late payment is not permitted. We agree with the trial court's conclusion that proof by the landlord of actual receipt of the Notice to Cease is not required by the statute. Rather, as with other matters relating to service, the statute, otherwise silent respecting the means and methods of service, requires no more than that the document be sent or delivered in a manner designed to achieve notice.
Requiring that the landlord prove actual service, as a jurisdictional prerequisite, would not further any of the goals of *224 the statute. Moreover, it would effectively transform a statute designed to provide a speedy and efficient mechanism for determining rights to possession into one in which judges were routinely required to try disputes relating to service. While the purpose of the Anti-Eviction Act is the protection of tenants, and while the Act is liberally construed in general, see McQueen v. Brown, 342 N.J.Super. 120, 775 A.2d 748 (App.Div.2001), aff'd, 175 N.J. 200, 814 A.2d 1042 (2002), the added inefficiency and expense of requiring personal service of even routine notices would serve no purpose and would impose an unnecessary and unfair burden on landlords.
Second, while we agree with the tenants that the method of service used here created a rebuttable presumption of their receipt of the Notice to Cease, their argument that their testimony was sufficient to rebut that presumption lacks merit. Plainly, the trial judge concluded that the testimony by the tenants that they never received any of the notices about the certified mail and that they never received the copy of the Notice to Cease that was sent to them via regular mail lacked credibility. Our review of the transcript of the trial compels us to reach the same conclusion. Apart from vague denials that they received any notices from the post office and general suggestions that their mail is often lost or misdirected, the tenants offered no explanation sufficient to demonstrate that they did not, in fact, receive the Notice to Cease alerting them that the late payment of rent would no longer be acceptable. We reject, therefore, their argument on appeal that proof by the landlord of actual delivery of the Notice to Cease is a prerequisite to eviction and their alternative argument that the evidence in the record was sufficient to overcome the presumption of delivery of the notice sent to them by regular mail.
We turn, then, to the tenants' argument that the landlord's failure to reiterate that continued late payment would expose them to eviction effectively voided the Notice to Cease. This argument is based in large part on an analysis of the interplay between the Notice to Cease and the acceptance thereafter of rent payments made late. The Anti-Eviction Act includes two general categories of grounds on which a landlord may seek, by way of a summary dispossess action, to evict a tenant. Some of the grounds set forth in the statute permit the landlord to immediately seek a judgment of possession, including, for example, failure to pay rent, see N.J.S.A. 2A:18-61.1(a), destruction, damage or injury to the premises either willfully or as a result of gross negligence, see N.J.S.A. 2A:18-61.1(c), or conviction of certain offenses, see N.J.S.A. 2A:18-61.1(n), (o), (p) and (q). Other grounds for eviction, however, require that the tenant be advised, by way of a Notice to Cease, that the particular behavior violates the lease and that it will, if not corrected, be grounds for eviction. See, e.g., N.J.S.A. 2A:18-61.1(b) (disorderly conduct, disruptive of the peace and enjoyment of other tenants); N.J.S.A. 2A:18-61.1(d) (breach of valid rules and regulations); N.J.S.A. 2A:18-61.1(e)(1) (breach of landlord's legitimate right of re-entry). Included among the latter category is the ground here in issue, namely, that the tenant, after Notice to Cease, has "habitually and without legal justification" failed to pay the rent when due and owing. N.J.S.A. 2A:18-61.1(j).
In some circumstances, acceptance of rent may operate as a waiver of a breach of the lease and thereby prevent eviction. See, e.g., A.P. Development, supra; Montgomery Gateway East I v. Herrera, 261 N.J.Super. 235, 240, 618 A.2d *225 865 (App.Div.1992); Jasontown Apartments v. Lynch, 155 N.J.Super. 254, 259, 382 A.2d 688 (App.Div.1978). Here, the tenants urge us to find that the landlord's acceptance of late rent paid by them after the Notice to Cease operated as a waiver of that notice in its entirety. We do not agree, in part because the statutory basis for eviction here, namely, habitual late payment of the rent, itself requires that the landlord demonstrate that the late payment of rent continued after the Notice to Cease. Indeed, as our Supreme Court has held, this ground for eviction is unique, for the "landlord is obliged to accept a series of late payments in order to establish that the lateness is habitual." A.P. Development, supra, 113 N.J. at 498, 550 A.2d 1220. In fact, as we have held, the very term "habitual" requires that there be more than one late payment after the notice and that a single late payment following notice will not support eviction. See 534 Hawthorne Avenue Corp. v. Barnes, 204 N.J.Super. 144, 147-48, 497 A.2d 1265 (App.Div.1985).
The difficulty in analyzing whether the acceptance of late payments after issuance of a Notice to Cease constitutes mere compliance with the requirements for proof of habit or whether it rises to the level of waiver sufficient to void the effectiveness of the Notice to Cease lies in the practice of the landlord who accepts further late payments in silence. Our Supreme Court, in addressing this issue, noted that the challenge is to decide whether the late payment and the acceptance of the late payment, while prohibited by the lease, nevertheless has become a part of the accepted course of dealings of the parties. See A.P. Development, supra, 113 N.J. at 505, 550 A.2d 1220. In order to obviate the difficulty in determining whether the payments were habitually late but had become acceptable, the Court declined to adopt a test that would have looked only at the length of time between the service of the Notice to Cease and the filing, following the service of the required Notice to Quit, of the eviction action. Ibid. Rather, the Court determined that the question of waiver would rest on evidence of a continuing notice that the late payments, although accepted, were in breach of the lease. In the Court's words:
Thus, we do not decide this case on the basis that the landlord's failure to evict tenants for sixteen months after service of Notice to Cease was unreasonable. Instead we hold that landlords must give clear notice and continue to give such notice to their tenants after a Notice to Cease is served. Such notice should state that the Notice to Cease remains applicable and continual habitual late payment of rent may lead to eviction. If the landlord's monthly late payment notices had clearly stated that the tenant's continued failure to pay rent promptly would lead to eviction, the landlord's position in this case would be upheld. However, they did not. In fact, as noted, they became progressively less harsh. The last two letters did not even threaten "further actions." Moreover, the addition of a late charge in the last four letters created a confusing signal: it led Mrs. Band to expect that payment of the extra fee would "square" her account with the landlord. Consequently, their course of dealing made it necessary for the landlord to give notice to Mrs. Band that its right to prompt payment would be strictly enforced and that eviction would ensue if rent was not paid in a timely fashion.
[Id. at 505-06, 550 A.2d 1220.]
The trial judge in the matter now on appeal declined to interpret this language from A.P. Development to require that the landlord give additional notices to the tenant that the continuing failure to *226 pay the rent on time and the acceptance of the rent when paid late was not a waiver of the Notice to Cease. He reasoned that because the statute refers only to the Notice to Cease and the Notice to Quit, no further notices are required by the statute. His interpretation of the above-quoted language was that it was the very language of the continuing communications between the landlord and the tenant in A.P. Development that paved the way for the waiver argument and led to the Court's decision that the parties had entered into a course of dealing that in effect invalidated the previously-served Notice to Cease. We do not agree with this interpretation.
In A.P. Development the Court confronted a lengthy delay between the service of the Notice to Cease and the complaint for possession during which a series of communications was sent to the tenant, each less strident than the last. The correspondence from the landlord, plainly, demonstrated that the lateness of the payments had become acceptable because the landlord stopped threatening further action. At the same time, the sixteen-month period of time between the Notice to Cease and the eviction complaint was at least an indication that the landlord no longer intended to pursue the eviction on the ground of habitual lateness. The Court, rather than adopting a bright-line test relating to a maximum number of months between the Notice to Cease and the filing of the complaint for possession, as the parties there urged it to do, looked to the content of the communications during that time to decide the question of waiver based on a course of dealing analysis. Notwithstanding that determination, however, the Court's holding could not be more clear respecting the requirement that the landlord "give clear notice and continue to give such notice" after the Notice to Cease has been served.
The trial court judge reasoned that this directive would add requirements relating to notice that are not found in the statute itself, but we do not understand the Court's holding to do so. Rather, we interpret the language in A.P. Development to mean that the landlord, following a Notice to Cease, may not thereafter accept further late payments in silence, but must continue to alert the tenant that the late payments are made in breach of the lease in order to avoid imposition of the waiver analysis. While we do not understand A.P. Development to require service of an additional Notice to Cease, we interpret it to mean that the landlord will continue to notify the tenant, when further late payments are accepted, that the breach has not been cured thereby.
This record amply demonstrates why the continuing notice of breach is necessary. The landlord served the Notice to Cease in August 2002 and filed its eviction complaint, on a ground other than habitual late payment, in March 2003. The complaint was not amended to assert that the habitual late payment was a breach and a basis for eviction until April 30, 2003. Because the landlord here was silent in the interim as to the continuing validity of the previously served Notice, the directive of the Supreme Court in A.P. Development plainly applied.
The tenants' final argument on appeal merits only a brief discussion. They urge us to reverse the judgment of possession based on the judge's failure to consider the circumstances which led to their late payment of rent. Relying on Tower Management, supra, they contend that the circumstances surrounding late payment, in general, create an equitable defense to eviction based on grounds of habitual lateness. Tower Management, supra, 226 N.J.Super. at 306, 544 A.2d 389. They urge us to conclude that because their late *227 payments were due to injury and loss of employment, the landlord cannot demonstrate that they were habitually late in paying the rent. We disagree.
In Tower Management, the tenant resided in a unit in a building that was under new ownership and undergoing conversion to a condominium complex. He had resided there for fifteen years and had never been late with his rent. Id. at 305, 544 A.2d 389. His original lease included a five day grace period but he had, since its expiration, become a month-to-month tenant. He sent two payments, one of which was one day late and the second of which was four days late. The delivery of the latter payment was delayed because he was out of town. He then made rent payments in the next two months each of which was timely. Id. at 306, 544 A.2d 389. Based on that record, we found that the landlord had failed to prove that the tenant was habitually late in paying the rent. While we referred in that context to the equities of eviction, we did not there create a broader rule in the nature of a general equitable defense as the tenants here have suggested.
Nor would such a defense alter our view of the facts in this record. These tenants were late in paying rent and failed to regularly pay rent for many months prior to service of the Notice to Cease. That the pattern qualified as habitual is apparent from the face of the records. We reject, therefore, the tenants' argument that the judge was obliged to consider the reasons why those payments were late and we reject their argument that Tower Management creates a general equitable defense to eviction based on habitual late payment.
Because of our analysis of the continuing notification requirement of A.P. Development, we reverse the order of the trial court entering judgment of possession and we remand for dismissal of the complaint and for vacating of the judgment and the warrant of removal, if any.
Reversed and remanded.
NOTES
[1] While the record indicates that a payment of $1,800 was made in December 2002, which erased all of the rent then due and resulted in a credit, it appears that this payment was made through a check which, save for the amount of $100, was dishonored two weeks thereafter.
[2] The certification states that the monthly rental for the unit was $662.39 and that the amount then due and owing was $762.39, neither of which is accurate. In fact, the monthly rental amount for the unit at all times relevant was $525.62 and the amount in rent and late fees that was due as of March 28, 2003, when the certification was filed was far greater than the sum included in the certification.
[3] The landlord expressed a concern that if it were to accept and negotiate the check tendered by the tenants, it would be required to forgo its eviction of the tenants. Because the check had been issued by the Essex County Welfare Board and funds from that source could not be accepted if eviction proceedings were ongoing, the landlord opted to decline the funds and proceed with its complaint.