**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4103-16T3
                  A-4516-16T3

IN THE MATTER OF LAYOFFS
OF BERGEN COUNTY SHERIFF'S
DEPARTMENT.

_____

POLICEMEN'S BENEVOLENT
ASSOCIATION, LOCAL 49,
BERGEN COUNTY SHERIFF
BUREAU OF POLICE SERVICES,
on behalf of the association and
its individuals,

     Plaintiff-Appellant,

v.

BERGEN COUNTY SHERIFF'S
OFFICE, COUNTY OF BERGEN,
BERGEN COUNTY BOARD OF
CHOSEN FREEHOLDERS[1] and
BERGEN COUNTY SHERIFF
MICHAEL SAUDINO, in his
individual and official capacity,

     Defendants-Respondents.

_____

_____

[1] Improperly pled as Bergen County Board of Freeholders.

Argued December 4, 2018 – Decided April 18, 2019

Before Judges Yannotti, Rothstadt and Gilson.

On appeal from the New Jersey Civil Service Commission, Docket No. 2017-3520; and Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000162-17.

Michael A. Bukosky argued the cause for appellant Bergen County Police Benevolent Association, Local 49 (Loccke, Correia & Bukosky, attorneys; Michael A. Bukosky and Corey M. Sargeant, of counsel and on the briefs).

Pamela N. Ullman, Deputy Attorney General, argued the cause for respondent Civil Service Commission in A-4103-16 (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Pamela N. Ullman, on the brief).

Catherine M. Elston and Frank P. Kapusinski, Assistant County Counsel, argued the cause for respondents (C. Elston & Associates, LLC, attorneys for respondent Bergen County Sheriff Michael Saudino; Patrick J. O'Dea, General Counsel, attorney for respondent Bergen County Sheriff's Office; and Julien X. Neals, Bergen County Counsel, attorney for respondent County of Bergen; Catherine M. Elston, Patrick J. O'Dea and Frank P. Kapusinski, of counsel and on the joint briefs; Cathlene Y. Banker, on the joint briefs).

Edward J. Florio argued the cause for respondent Bergen County Board of Chosen Freeholders (Florio Kenny Raval, LLP, attorneys; Edward J. Florio, of counsel and on the briefs; Michael S. Urcuyo, on the brief).

PER CURIAM

In these appeals, which we consider back-to-back and have consolidated for the purpose of writing a single opinion, appellant the Policemen's Benevolent Association, Local 49 (PBA) raises issues relating to its attempted challenges to respondent Bergen County Sheriff's Office's (BCSO) implementation of a 2017 layoff plan. That plan only impacted former members of the Bergen County Police Department (BCPD) who came under the authority of the BCSO after the 2015 merger of the BCPD into the BCSO.

In A-4103-16, the PBA appeals from a final agency decision by the Civil Service Commission (CSC) denying a stay of the layoff plan. In A-4516-16, the PBA appeals from a June 6, 2017 order of the Chancery Division that dismissed an action filed by the PBA to enjoin the BCSO from implementing the layoff plan for failure to exhaust administrative remedies.

In its challenge to the CSC's decision, the PBA contends that the CSC did not properly analyze its application for a stay because it failed to (1) recognize that the county sheriff was not authorized to "request the layoffs"; (2) "follow the statutory requirements" that do not allow layoffs from "a targeted division"; (3) "investigate" whether the county sheriff "carried out the pre-requisite and mandatory layoff actions necessary before a layoff plan can be approved"; (4)

"carefully analyze a[ny] comparison between sheriff's officers and county police officers on a timely basis"; and (5) "conduct a proper analysis based on the regulatory criteria." It further contended that the CSC's decision was clearly erroneous.

In its appeal from the Chancery Division's dismissal of its complaint, the PBA contends that the court, as compared to the CSC, was "the proper venue" for its claim. It also argues that it was entitled to relief from the Chancery Division under the theory of equitable estoppel and, contrary to the court's decision, it was not required to exhaust its administrative remedies before seeking that relief.

We have considered the PBA's contentions in light of the record and the applicable principles of law. For the reasons that follow, we conclude that the PBA's appeals are moot and should be dismissed.

I.

In order to give context to our decision, an extended discussion of the facts leading to the challenged layoff plan and the procedural history of each action is required. In 2013, the Bergen County Board of Chosen Freeholders (Freeholders) adopted an ordinance that called for the BCPD's transfer from the county's Department of Public Safety to the BCSO. In anticipation of the

merger, the Freeholders appointed a panel of law enforcement and government personnel to make recommendations about the implementation of the merger. The panel, chaired by the county prosecutor, incorporated its recommendations into a "Memorandum of Agreement for the Long Term Realignment of Police Services" (MOA) that the county executive, prosecutor, and sheriff signed and approved on January 1, 2015, before presenting it to the Freeholders.

The MOA stated that the BCPD was being realigned with the BCSO. It provided that once the Freeholders adopted an ordinance transferring all operational and administrative authority over the BCPD to the BCSO, the BCPD would be known as "Bergen County Sheriff, Bureau of Police Services." The MOA also provided that the BCPD would continue to be a separate unit overseen by the BCSO and that there would be no changes required to any existing labor contracts.

At the time of the MOA, seventy-five BCPD positions had already been reduced through attrition. The agreement stated that the number of BCPD officers was expected to be further reduced through attrition, leaving the BCSO with approximately 200 total officers, around fifty BCPD police officers and 150 Sheriff's Officers. No layoffs were contemplated at that time.

In his submission of the MOA to the Freeholders, the county prosecutor noted the involvement of the PBA in the document's formation. He stated that the PBA representatives met "subcommittee members to express their concerns and wishes . . . ." He believed that the PBA was willing to work with the County to insure the merger succeeded and the PBA understood "the need to freeze current salaries of current [BCPD] officers to allow Sheriff's officers['] salaries . . . to equalize with" BCPD officers' salaries. Based on the PBA's commitment, the prosecutor reported that "certain changes were made to accomplish some of [the PBA's] concerns."

The Freeholders adopted ordinances in 2015 implementing the MOA, including its recognition that the reduction in BCPD officers' numbers would be achieved through attrition. However, two years later, the Sheriff abandoned that plan in favor of layoffs of BCPD officers.

On March 23, 2017, the BCSO submitted a layoff plan, effective June 12, 2017, to the CSC for its approval. In the submission, the BCSO justified the need for layoffs by relying upon a May 2015 New Jersey Supreme Court approved court security plan for courthouses, which called for an armed Sheriff's Officer to be stationed in every courtroom in use by a judge or hearing officer.

The BCSO determined it needed to hire thirty-five new BCSO officers to implement the plan at an estimated cost that was in excess of $3 million.

The BCSO explained that it considered alternatives before deciding upon layoffs. Those alternatives included hiring freezes and attrition of clerical and other non-police positions. It also considered lateral transfers of BCPD officers, but found they were not "the best means of achieving . . . the goals of efficiency and economy in the operations of the [BCSO] in furtherance of the public interest."

In order to pay the expense of hiring the new BCSO officers and staying within the mandatory budget cap of two percent that became effective January 1, 2017, under N.J.S.A. 40A:4-45(b), the BCSO concluded that rather than training highly paid BCPD officers to assume the new positions, "[t]he abolition of the remaining [twenty-six] . . . [BCPD] officer positions via layoffs w[ould] expedite the achievement of efficiencies for which the realignment of [BCPD] was effectuate[d] in 2015, as well as offset the cost of hiring the new Sheriff's Officers mandated by the Court Security Plan."

While the BCSO's plan was pending before the CSC, but after the Freeholders approved the layoff plan, the PBA filed a petition with the CSC on April 17, 2017, requesting "relaxation to consider petitioner[']s application to

establish a different layoff unit . . . [and] to deny approval of the layoff plan submitted by . . . [BCSO] under the totality of the circumstances." Those circumstances included the BCSO's failure to comply with N.J.A.C. 4A:8-1.3 and the fact that the Sheriff's reasons for layoffs was pre-textual. According to the PBA's submission, there was no verification of the Sheriff's need for layoffs and, because the PBA challenged the Sheriff's reasons, a hearing in the Office of Administrative Law (OAL) was required.

The CSC approved the layoff plan on April 24, 2017. In its letter advising the Sheriff of its approval, the CSC made no mention of the PBA's petition.

On May 2, 2017, the PBA again petitioned the CSC for relief. This time, it sought a stay of the CSC's approval of the layoff plan "pending application to the Appellate Division and further determination by the [CSC]" because the CSC "failed to consider the establishment of a different and more appropriate layoff unit." In its thirty-nine page petition, the PBA set forth in detail its legal arguments as to why it was entitled to a stay under the criteria stated in N.J.A.C. 4A:2-1.2.[2]

_____

[2] The regulation provides in pertinent part as follows:

While the PBA's petition was pending, it received permission from us to file an emergent application seeking to stay the CSC's approval of the BCSO layoff plan pending appeal. As part of that application, the PBA filed its notice of appeal in this matter on May 31, 2017, only challenging the CSC's April 24, 2017 decision.[3] After considering the parties' submissions, we denied the emergent motion for a stay.

(a) Upon the filing of an appeal, a party to the appeal may petition the [CSC] for a stay or other relief pending final decision of the matter.

. . . .

(c) The following factors will be considered in reviewing such requests:

1. Clear likelihood of success on the merits by the petitioner;

2. Danger of immediate or irreparable harm if the request is not granted;

3. Absence of substantial injury to other parties if the request is granted; and

4. The public interest.

[N.J.A.C. 4A:2-1.2.]

[3] The PBA did not file the required Case Information Statement (CIS) at that time. However, on October 31, 2017, it filed the CIS and identified the CSC's

After the BCSO filed its opposition to the PBA's petition, on June 7, 2017, the CSC issued a final decision denying the PBA's request for a stay. In its fourteen-page decision, the CSC addressed each of the PBA's contentions and explained in detail why it concluded that the PBA failed to meet the criteria for a stay under N.J.A.C. 4A:2-1.2.

The CSC also observed that many of the PBA's contentions argued in support of a stay could not "be addressed fully on the written record." It stated the following:

> The [CSC] will not attempt to determine the merits of these issues without a full plenary hearing before an Administrative Law Judge who will hear live testimony, assess the credibility of witnesses and weigh all of the evidence in the record before making an initial decision. Therefore, since there are disputes of facts, there has not been a demonstration of a clear likelihood of success that the anticipated layoff has been conducted in bad faith. Accordingly, the PBA has not demonstrated a sufficient basis for a stay of the instant layoff. However, the PBA or any employees affected by the layoff are not precluded from pursuing such good faith arguments in any subsequent appeal of the layoff.

In reaching its conclusion, the CSC recognized the "impact of a layoff on affected employees . . . [who] may suffer harm while awaiting an [OAL]

---

June 7, 2017 final agency decision denying PBA's application for a stay as the decision being appealed.

hearing[, but that it was] . . . financial in nature[] and . . . [could be] remedied . . . [with] back pay should [the PBA] prevail in the good faith appeal."

The PBA filed a motion with us to stay the CSC's decision and the implementation of the layoff plan "pending disposition by the [CSC] of the PBA's request for approval of a different plan . . . ." We denied that motion on June 9, 2017.

After we denied the PBA's motion, it filed an appeal with the CSC on June 14, 2017, challenging the good faith of the proposed layoffs and raising issues about the wrongful effect of the plan on the lateral and demotional rights or seniority interests of the impacted employees. In the meantime, the layoff plan was implemented and the affected BCPD officers were terminated from employment.

After this appeal was filed with us and the matter fully briefed, the parties informed us that the CSC rendered a decision in the layoff rights appeal.[4] The CSC's determination in that matter is the subject of a new appeal filed by the PBA and the individual BCPD officers affected by the layoff plan. See In re Alan Brundage et. al., A-3466-17.

---

[4] The CSC's final agency decision is dated March 29, 2018.

A-4103-16T3

II.

The PBA filed its complaint in the Chancery Division challenging the layoff plan on March 27, 2017, two days after the BCSO submitted the plan to the CSC as indicated above. The complaint essentially asserted claims that the PBA relied to its detriment on promises that a reduction in the number of BCPD officers after the merger would be achieved only through attrition. It argued that the layoffs should be barred by promissory estoppel, equitable estoppel, employer misrepresentation, employer fraud, and breach of the covenant of good faith and fair dealing. Although the PBA filed the complaint, it never served it on any parties.

While the PBA's May 2, 2017 petition for a stay from the CSC was pending, it filed an amended complaint in the Chancery Division action on May 15, 2017, adding new claims relating to alleged violations of various state statutes and provisions of the state and federal constitutions. Among the relief sought, the PBA asked for a declaration that any layoffs carried out by the BCSO be nullified and for preliminary and permanent injunctions forbidding any BCPD officers from being laid off except through attrition.

After the PBA filed its amended pleading, the BCSO removed the matter from state court to federal court based on one count in the PBA's complaint that

12

alleged the BCSO violated the federal constitution. In response to the removal, the PBA dismissed its complaint and filed a new complaint in the Chancery Division on June 2, 2017, without the federal claim and made application for entry of an order to show cause awarding injunctive relief. In response to the complaint, each named defendant filed a motion to dismiss under Rule 4:6-2 in lieu of an answer.

On June 6, 2017, the parties appeared before Judge Menelaos Toskos for oral argument regarding the PBA's application for temporary restraints and the motions filed to dismiss the complaint. After considering the parties arguments, Judge Toskos denied the PBA's application for injunctive relief and granted the motions to dismiss the complaint. The dismissals were without prejudice.

In a comprehensive oral decision, Judge Toskos explained his reasons for denying restraints and dismissing the complaint. Initially, he found that the relief being requested in the matter before him was the same that was being requested before the Appellate Division and the CSC, noting that there was no immediacy for relief as one of the other tribunals could find a remedy. The judge applied the criteria for injunctive relief as stated in Crowe v. DeGioia, 90 N.J. 126 (1982), and reviewed each of the PBA's claims under that standard before concluding that the PBA did not meet its burden. He then considered

whether there was a need to grant relief in order to maintain the status quo and concluded that because monetary relief could be afforded to any of the PBA members who were adversely affected by the layoff plan, injunctive relief was not necessary.

Regarding the motions to dismiss, Judge Toskos stated that, in accordance with Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739 (1989), a complaint should be dismissed if it stated no basis for relief and if discovery would not provide for any. Citing to Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103 (App. Div. 2011), the judge observed that "[o]rdinarily courts will not undertake . . . to review a matter where the plaintiff has failed to exhaust available remedies or an appeal lies from the action of the agency, the courts will typically require the appellant to exhaust those remedies." The judge found that "the complaint [does not] contain[ any] allegation that the [PBA] exhausted available administrat[ive] and judicial remedies . . . [and] sought a final decision."

In granting the motions for dismissal, Judge Toskos explained why the orders were "without prejudice." He stated:

> If there's something that . . . for whatever reason, can't be decided by the [CSC], then after the dust settles, I'm not prejudging this, but I guess you can come back. I am going to dismiss it without prejudice, which is

14

generally what's done under Rule 4:6-2(e), which the Supreme Court has recommended that we take that manner of dismissal, and that would leave the right for [defendants] to argue that some of those claims should be dismissed . . . with prejudice . . . for failure to comply with Rule 4:69 and the [forty-five-]day statute of limitations. But I'm not going to decide that today. So I'm going to dismiss the complaint without prejudice.

The PBA orally moved for a stay of Judge Toskos' orders. The judge denied the application as he again found no immediate and irreparable harm and that there was a significant public interest in allowing the Sheriff to exercise his knowledge and expertise as a constitutional officer regarding the budget and public funds.

On June 23, 2017, the PBA filed with our court an application for permission to file an emergent motion on short notice for a stay pending an appeal of Judge Toskos' denial of its application and the dismissal of its complaint, which we granted. The PBA filed its motion and notice of appeal on June 26, 2017. However, after the motion was filed and we considered the parties' submissions, we denied the motion for a stay pending appeal on June 28, 2017.

After the PBA filed its appeal, the BCSO filed a motion to dismiss the appeal without prejudice because it was moot. We denied the motion without prejudice to the BCSO being able to raise that issue with our court's merits panel.

III.

As already noted, prior to oral argument before us in this matter, the BCSO carried out the layoff plan and the CSC issued a decision on the layoff rights of the laid off officers, which is under appeal. Under these circumstances, we are constrained to dismiss the appeals as being moot because the only relief being pursued in them is a reversal of the CSC's and the Chancery Division's denials of a stay and the Chancery Division's dismissal of the complaint without prejudice. If we were to grant relief to the PBA, staying the layoff plan, it would at this point be meaningless.

"Mootness is a threshold justifiability determination rooted in the notion that judicial power is to be exercised only when a party is immediately threatened with harm." Stop & Shop Supermarket Co., LLC v. Cty. of Bergen, 450 N.J. Super. 286, 291 (App. Div. 2017) (quoting Betancourt v. Trinitas Hosp., 415 N.J. Super. 301, 311 (App. Div. 2010)). "[F]or reasons of judicial economy and restraint, courts will not decide cases in which the issue is hypothetical, [or] a judgment cannot grant effective relief[.]" Ibid. (alterations

16

in original) (quoting Cinque v. N.J. Dep't of Corr., 261 N.J. Super. 242, 243 (App. Div. 1993)). Moreover, "[a] case is moot if the disputed issue was resolved, at least with respect to the parties who instituted the litigation." Matthew G. Carter Apartments v. Richardson, 417 N.J. Super. 60, 67 (App. Div. 2010) (alteration in original) (quoting Advance Inc. v. Montgomery Twp., 351 N.J. Super. 160, 166 (App. Div. 2002)). Furthermore, "[a]n issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy." Comando v. Nugiel, 436 N.J. Super. 203, 219 (App. Div. 2014) (alteration in original) (quoting Greenfield v. N.J. Dep't of Corr., 23 N.J. Super. 254, 257-58 (App. Div. 2006)).

Although we offer no opinion on the propriety of the layoff plan, even if we agreed with the PBA's contentions that it was improper, it is now almost two years after the plan's implantation and restoring improperly terminated employees is not a possibility. If their claims are not completely addressed through the appeal of the CSC's final decision regarding their layoff rights, they may still pursue claims for damages, such as back pay, through a lawsuit as contemplated by Judge Toskos' dismissal without prejudice of the PBA's complaint, once the administrative process through appeal has been completed.

Appeals dismissed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-4103-16T3