261 N.J. Super. 235 (1992)
618 A.2d 865
MONTGOMERY GATEWAY EAST I, PLAINTIFF-RESPONDENT,
v.
ANA PALAU HERRERA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1992.
Decided December 30, 1992.
*237 Before Judges MICHELS, BILDER and BAIME.
John Ukegbu argued the cause for appellant (Hudson County Legal Services Corp., Timothy K. Madden, Director, attorney; Mr. Ukegbu, of counsel and on the brief).
James J. Tutak argued the cause for respondent (D'Alessandro, Tutak & Aschoff, attorneys; Mr. Tutak, on the letter brief).
The opinion of the court was delivered by BILDER, J.A.D.
This is an appeal from an order of the Special Civil Part granting landlord's judgment for possession in a residential eviction action for failure to pay rent. See N.J.S.A. 2A:18-61.1(a).
Plaintiff is the owner of a multi-family high rise apartment in Jersey City. Defendant Ana Herrera has been a tenant since 1982. She resides there with her two sons. Since at least 1986 *238 her rent has been subsidized by the federal Department of Housing and Urban Development pursuant to the National Housing Act, 12 U.S.C.A. 1701 et seq. In general terms, the overall rent has been set at the market rate, but defendant has only had to pay an amount equal to 30 percent of her adjusted monthly income, or, when she was on welfare, the amount designated by the welfare agency to meet the housing needs of herself and her children. 42 U.S.C.A. 1437a(a)(1). The balance, referred to as a Section 8 payment, is met by HUD. 42 U.S.C.A. 1437f(c)(3)(A). The landlord is responsible for determining eligibility and the amount of the tenant's portion of the rent. 42 U.S.C.A. 1437f(d)(1); 24 C.F.R. 880.603(b). Plaintiff was required to recompute defendant's portion of the rent, once a year or whenever a change occurred in the family income. 24 C.F.R. 880.603(c).
On April 1, 1991, plaintiff instituted the instant summary dispossess action under the Anti-Eviction Act based upon a nonpayment of rent. N.J.S.A. 2A:18-61.1(a). In the complaint, it alleged a written lease for a one-year period commencing June 1, 1989, a monthly rental of $204, and unpaid rent totaling $2,818. At the trial, defendant denied the correctness of the rental; contested the amount claimed due; and contended that the existence of a renewal lease for a one-year period commencing June 1, 1991, whose rent was current, barred removal for nonpayment of rent under an expired lease, i.e., that the nonpayment of rent provisions of N.J.S.A. 2A:18-61.1(a) refer only to a current lease; and that by entering into the new lease, plaintiff waived the default (although not the right to collect the rents).[1]
Following a plenary hearing, the trial judge accepted plaintiff's calculations as to defendant's portion of the rent, found a balance due with respect to unpaid rental for the period October *239 1989 through March 1991 to be $1,403, rejected defendant's construction of the statute and claim of waiver, and ordered the entry of a judgment for possession. Conditioned upon a continued payment of the rental on the current lease, we stayed the warrant of removal pending appeal.
On appeal, defendant repeats her contention that the default under the expired lease cannot be "good cause" under the Act; that by entering into a new lease, plaintiff waived its right to treat the old nonpayments of rental as a default; and that the evidence does not support the trial judge's finding as to the amount of rent due from defendant.
An examination of the record persuades us of a number of separate reasons why the decision below must be reversed.
First, we find that the record does not support the trial judge's findings either as to the defendant's share of the rental during the period from October 1989 through May 1990 or as to her accumulated unpaid rent obligations. In his November 14, 1991 decision the trial judge said:
[I find] that the landlord's calculation of rents due and owing and unpaid in this matter by the tenant to the landlord is $1403. No substantial proofs have been offered to dispute the amount last stated.
The record does not support this conclusion. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974).
Ms. Herrera testified that she lost her job at the end of June 1989, that she notified plaintiff's property manager, and that her contribution to the rental was reduced from the $204 she had been paying to $75 per month. Marked for identification but denied admission into evidence was a computer printout of defendant's account which had been prepared by plaintiff, furnished by plaintiff to defendant by way of discovery, and used by plaintiff's current property manager, Bernard Peterman, as the basis for his testimony. Peterman had no personal knowledge of any events prior to January 25, 1991 and identified the printout as a document kept in the ordinary course of business. *240 That printout shows that during the six months from October 1989 to March 1990 inclusive, the base rent was $1,082 and plaintiff received section 8 payments of $1,007. Beginning in April 1990 the base rent is shown as increasing to $1,105 and through September 1990 plaintiff received section 8 payments of $1,030. This all accords with Ms. Herrera's testimony that her contribution had been reduced to $75. Since Peterman's knowledge came solely from the printout, his testimony that defendant's contribution was first reduced to $75 in June 1990 is entitled to no weight. Not only is the $1,403 balance unsupportable but, at least superficially, it would appear that the payments credited to defendant on the printout and the, at least questionable, late charges which suddenly appear in March 1991, might well eliminate any balance due.
Second, the failure to establish the amount claimed is due required dismissal of plaintiff's complaint for possession. See Housing Auth. of Passaic v. Torres, 143 N.J. Super. 231, 236, 362 A.2d 1254 (App.Div. 1976).
Third, we are satisfied that the new lease given to defendant and the acceptance of rent thereunder compels a finding of waiver. See Jasontown Apartments v. Lynch, 155 N.J. Super. 254, 262-263, 382 A.2d 688 (App.Div. 1978); also A.P. Development Corp. v. Band, 113 N.J. 485, 498, 550 A.2d 1220 (1988). Standing alone, the acceptance of rent would not necessarily operate as a waiver. See Jasontown Apartments v. Lynch, supra. It would be no more than evidence. Ibid. However, the granting of a new lease and acceptance of rent in that new term is so inconsistent with an intention to require a surrender of possession of the premises as to amount to an election to waive the right to terminate the tenancy because of the past rent defaults.
At oral argument some concern was expressed that the recognition of a new or renewal lease as a waiver of past defaults would force landlords to accelerate the institution of dispossess actions. While the immediate institution of such an *241 action is an option the landlord may choose, there is equally available the option of refusing to enter into a renewal lease and treating the tenant as a holdover while attempting to work out the problem of the past due rent. If the recognition of a new or renewal lease as a waiver of a right to dispossess for past rental defaults does act to accelerate the institution of dispossess actions, it by the same token will act to eliminate the assertion of late dispossess actions tried with stale and sometimes unavailable evidence.
Finally, we note that it is not clear that plaintiff complied with the notice provisions of federal law. 42 U.S.C.A. 1437f(d)(1)(B)(iv). Certainly there was no finding on this score by the trial judge.
The Anti-Eviction Act was enacted to protect residential tenants from the effects of what has become a critical housing shortage. See Morristown Mem. Hosp. v. Wokem Mtge. & Realty., 192 N.J. Super. 182, 186, 469 A.2d 515 (App. Div. 1983); Harden v. Pritzert, 178 N.J. Super. 237, 240, 428 A.2d 927 (App.Div. 1981). Its aim is to protect residential tenancies by limiting their removal from covered premises to situations in which there are reasonable grounds and suitable notice is given. See A.P. Development Corp. v. Band, supra, 113 N.J. at 492-493, 550 A.2d 1220. It is remedial legislation expressing a strong public policy which should be construed liberally to advance its beneficial ends. See Royal Associates v. Concannon, 200 N.J. Super. 84, 93, 490 A.2d 357 (App.Div. 1985); Historical Note under N.J.S.A. 2A:18-61.2.
Reversed.
NOTES
[1] We note that an additional renewal lease must have been entered into for the period June 1, 1990 to May 31, 1991. The parties have not referred to this and it does not affect our opinion.