8 A.3d 788 (2010)
417 N.J. Super. 60
MATTHEW G. CARTER APARTMENTS, Plaintiff-Respondent,
v.
Kathy RICHARDSON, Defendant-Appellant.
No. A-1992-09T3.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 2010.
Decided November 24, 2010.
*789 Catherine Weiss argued the cause for appellant (Lowenstein Sandler, PC, and Essex-Newark Legal Services, attorneys; Ms. Weiss, Thomas Livolsi and Alyson D. Powell, Roseland, on the joint brief; Felipe Chavana, of counsel and on the joint brief).
Jeffrey R. Kuschner, Montclair, argued the cause for respondent.
Before Judges CARCHMAN, MESSANO and WAUGH.[1]
The opinion of the court was delivered by
MESSANO, J.A.D.
Following a summary trial in the Law Division, Special Civil Part, a judgment for possession was entered in favor of plaintiff/landlord, Matthew G. Carter Apartments, against defendant/tenant, Kathy Richardson. The trial judge concluded that plaintiff had established statutory grounds for eviction pursuant to N.J.S.A. 2A:18-61.1(j) (defendant had "after written notice to cease, . . . habitually and without legal justification failed to pay rent which [wa]s due and owing"). The trial judge entered a stay, premised upon defendant's payment of all rent then due and owing as well as her continued payment of future rent as it became due. The parties subsequently entered a consent order extending the stay pending appeal.
After defendant's notice of appeal was filed, she voluntarily vacated the premises. Defense counsel sought agreement with plaintiff's counsel to dismiss the appeal and vacate the judgment of possession. Plaintiff's counsel agreed to dismiss the appeal, but would not agree to vacate the judgment of possession unless defendant *790 reimbursed plaintiff for counsel fees incurred at trial and on appeal. Defendant would not agree, and the matter was listed for argument on our calendar.
Before us, defendant contends that the judgment of possession should be vacated because she "did not habitually pay her rent late." She also contends for the first time on appeal that the judgment should be vacated because plaintiff "waived any claim to possession by signing a new lease" with defendant.
Plaintiff counters by arguing that it established grounds for eviction and that it did not waive the right to proceed by executing a new lease with defendant. Plaintiff also contends that the appeal is moot in light of defendant's voluntary decision to vacate the premises, a position defendant counters in her reply brief.
We have considered these arguments in light of the record and applicable legal standards. We reverse.

I
The facts and procedural history are not in dispute. Plaintiff owned residential apartments at 20 Glenridge Avenue in Montclair, and defendant had resided there with her three daughters since 1995. Defendant received rental assistance payments through the United States Department of Housing and Urban Development's Section 8 Program. See Sudersan v. Royal, 386 N.J.Super. 246, 250, 900 A.2d 320 (App.Div.2005) (discussing the program and its statutory and regulatory framework). Pursuant to her lease with plaintiff, defendant's rent was considered "late" if not paid by the tenth day of each month.
In January 2009, plaintiff served defendant with a "notice to cease," alleging she had paid her rent late in February and July 2008, and in January 2009. The notice to cease further provided that "[u]nder New Jersey law, if [defendant] pa[id] [her] rent late two more times . . . [plaintiff] m[ight] terminate [her] tenancy and evict [her] for habitual late payment for [sic] rent." The notice to cease further advised defendant that plaintiff would continue to accept her rent even if paid late, but that it "d[id] not go along with the fact that [she] [was] paying it late." This non-waiver of plaintiff's eviction rights was more fully set forth in the last paragraph of the notice to cease.
Defendant tendered her rent in a timely fashion every month from February to May 2009. When she paid her June rent on June 18, plaintiff served her with a "1st Violation" of the notice to cease on June 26, reiterating that it was accepting the late rent but not waiving any rights to evict defendant in the future. See Ivy Hill Park v. Abutidze, 371 N.J.Super. 103, 117, 852 A.2d 217 (App.Div.2004) (requiring the landlord to "continue to notify the tenant, when further late payments are accepted, that the breach has not been cured thereby"). On July 1, plaintiff tendered a new lease to defendant, which all parties executed on July 6. This was the first "new lease" defendant received since the inception of her tenancy in 1995. Defendant paid her August rent on August 12, two days after the grace period provided in the new lease. Plaintiff served defendant with a "2nd violation" of the notice to cease on August 14, again reserving its right to evict defendant.
On September 9, plaintiff served defendant with a notice to quit and demand for possession, terminating defendant's tenancy effective November 1. See N.J.S.A. 2A:18-61.2 ("No judgment of possession shall be entered . . . except in the nonpayment of rent . . . unless the landlord has made written demand and given written notice for delivery of possession of the *791 premises."). On November 3, plaintiff filed its complaint seeking possession pursuant to N.J.S.A. 2A:18-61.1(j).
At trial on December 15, plaintiff's representative testified to these events and the various notices were introduced into evidence.[2] Defendant explained that she was late in paying her rent in June because she owed money to "PSE & G" which had threatened to "turn[ ] [her] lights off." Her August payment was late because she needed to purchase eyeglasses for her daughter before school began in September.
Citing our opinion in 534 Hawthorne Ave. Corp. v. Barnes, 204 N.J.Super. 144, 497 A.2d 1265 (App.Div.1985), the judge initially concluded that plaintiff had "established [its] case . . . under habitual late payment," because "two [late] payments were submitted after the notice to cease." The judge further noted that the testimony regarding defendant's payment history prior to the notice to cease and her excuses for late payments after the notice was served was elicited to determine if defendant had demonstrated "a legal justification" for her late payments. He determined that defendant had a problem "managing her money," and had not established a "legal justification" for the late payments.
There followed a colloquy between the judge and counsel during which the parties unsuccessfully attempted to resolve the dispute. Ultimately, the judge concluded plaintiff had established the statutory grounds for eviction and entered the judgment for possession.

II
We quickly dispense with two of the issues presented. First, we reject plaintiff's argument that the appeal is moot because defendant vacated the premises. Defendant notes that under the terms of the new lease, plaintiff is entitled to seek legal fees and costs incurred in the eviction proceedings if successful. At oral argument before us, plaintiff acknowledged that it is not waiving its ability to seek fees and costs in a separate action in the Special Civil Part. Moreover, the judgment of possession obtained in this action provides a basis for the revocation of defendant's housing voucher that she is currently utilizing in her new apartment. See 24 C.F.R. 982.552(c)(1)(ii) (permitting a local housing authority to "at any time . . . terminate program assistance . . . [i]f any member of the family has been evicted from federally assisted housing in the last five years").
We have noted that "[a] case is moot if the disputed issue was resolved, at least with respect to the parties who instituted the litigation." Advance Inc. v. Montgomery Twp., 351 N.J.Super. 160, 166, 797 A.2d 216 (App.Div.2002). The doctrine of mootness will bar review "if the issues are hypothetical, a judgment cannot grant effective relief, or there is no concrete adversity of interest between the parties." Ibid. The two reasons advanced by defendant convince us that the appeal is not moot.
We also reject defendant's second point on appeal, i.e., that plaintiff waived its cause of action under N.J.S.A. 2A:18-61.1(j) by executing a new lease with her in July 2009. First, the issue was never raised below and it is, therefore, not cognizable on appeal. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). Second, and more importantly, when plaintiff executed the new lease, it possessed no cause to evict defendant under *792 the Anti-Eviction Statute, N.J.S.A. 2A:18-61.1 to -61.39.
This case is therefore entirely distinguishable from the facts presented in Montgomery Gateway v. Herrera, 261 N.J.Super. 235, 618 A.2d 865 (App.Div. 1992), upon which defendant relies. In Herrera, supra, 261 N.J.Super. at 238, 618 A.2d 865, after initiating suit for non-payment of rent, the landlord executed a new lease with the tenant who had paid all the rent due and owing under the new lease at the time of trial. We concluded that
[T]he granting of a new lease and acceptance of rent in that new term is so inconsistent with an intention to require a surrender of possession of the premises as to amount to an election to waive the right to terminate the tenancy because of the past rent defaults.
[Herrera, supra, 261 N.J.Super. at 240, 618 A.2d 865.]
Here, when plaintiff executed the new lease with defendant, it had served the notice to cease and defendant had made one subsequent late payment. Plaintiff's cause of action for habitual late payment of rent had not accrued. See A.P. Dev. Corp. v. Band, 113 N.J. 485, 498, 550 A.2d 1220 (1988) (noting that the statutory cause of action "is not based upon a single late payment" after the notice to cease). Simply put, the execution of the new lease was not inconsistent with plaintiff's intention to evict defendant if she habitually paid her rent late, and, when the new lease was executed, plaintiff possessed no cause of action to waive.
The critical issue in this case is whether the Legislature intended to provide a cause of action for eviction pursuant to N.J.S.A. 2A:18-61.1(j) solely because a tenant makes a second late payment of rent after receipt of a notice to cease. Plaintiff contends that this was the Legislature's intent, and the trial judge agreed. We conclude, however, that whether a tenant "has habitually and without legal justification failed to pay rent which is due and owing" cannot be determined in such a mechanical fashion.
In construing the statutory language at issue, precedent has already established some parameters which we are obliged to follow. N.J.S.A. 2A:18-61.1(j) "has been interpreted to encompass habitual late payments of rent, even though it refers to `failure to pay,' rather than late payment." A.P. Dev. Corp., supra, 113 N.J. at 493-94, 550 A.2d 1220 (citing 534 Hawthorne Ave. Corp., supra, 204 N.J.Super. at 148, 497 A.2d 1265). "`[T]here must be more than one late payment following notice.'" A.P. Dev. Corp., supra, 113 N.J. at 494, 550 A.2d 1220 (quoting 534 Hawthorne Ave. Corp., supra, 204 N.J.Super. at 147, 497 A.2d 1265).
In Tower Mgmt. Corp. v. Podesta, 226 N.J.Super. 300, 302, 544 A.2d 389 (App. Div.1988), the tenant, who had resided in the premises for fifteen years, made two late payments immediately after being served with a notice to cease for habitual late payment.[3] In each instance, the rent was received by the landlord within days of the expiration of the grace period contained in the original lease that had since expired. Ibid. We noted the defendant's long-term status as a tenant, the potential loss of his conversion rights given the apartment was being converted to condominium ownership, his lack of proficiency in English, his explanation for the late payments, and his subsequent timely payments after receipt of the notice to quit. Id. at 305-06, 544 A.2d 389. We posed the *793 question: "[W]ould it be equitable to determine that defendant had evinced an `habitual' failure to pay his rent under these circumstances?" Id. at 306, 544 A.2d 389. We determined it was not. Ibid.
However, despite this language from Tower Mgmt., we reject defendant's argument that equitable considerations may be advanced in her defense of plaintiff's eviction action for habitual late payment. In Abutidze, supra, 371 N.J.Super. at 118, 852 A.2d 217, we rejected the tenants' request "to reverse the judgment of possession based on the judge's failure to consider the circumstances which led to their late payment of rent." We disagreed with the tenants' proposition that "the landlord c[ould] [not] demonstrate that they were habitually late in paying the rent" "because their late payments were due to injury and loss of employment." Ibid. We further explained that our holding in Tower Mgmt. did not "create a broader rule in the nature of a general equitable defense as the tenants . . . h[ad] suggested." Ibid.
We do not view our decision in 279 4th Ave. Mgmt., L.L.C. v. Mollett, 386 N.J.Super. 31, 898 A.2d 1036 (App.Div.), certif. denied, 188 N.J. 354, 907 A.2d 1014 (2006), as a retreat from our prior holding in Abutidze. In Mollett, the landlord attempted to evict the tenant based upon the habitual late payment of rent. Id. at 34, 898 A.2d 1036. The tenant, however, claimed that her rent was due on the eighteenth day of each month, not the first, as the new landlord attempted to enforce, and that she had made payments in accordance with her claim for nearly thirty years. Id. at 34-35, 898 A.2d 1036. She also asserted claims pursuant to Marini v. Ireland, 56 N.J. 130, 265 A.2d 526 (1970), that the premises were not habitable. Mollett, 386 N.J.Super. at 35, 898 A.2d 1036. The trial judge mistakenly concluded that the tenant could not enforce a due date other than the first of each month because she was a month-to-month tenant, and, further, that she could not assert a habitability defense. Id. at 36-37, 898 A.2d 1036.
In reversing the judgment of possession, we observed that "[w]here there is a disagreement between a new landlord and a long-time tenant over when rent is due, as there was here, the landlord should make some attempt to resolve the dispute before charging the tenant with habitual late payment of rent." Id. at 37-38, 898 A.2d 1036. We noted that the landlord unilaterally changed the due date without serving a proper notice to quit and therefore denied the tenant the opportunity to contest the reasonableness of the change. Id. at 38, 898 A.2d 1036. We also concluded that the tenant had the right to raise a Marini defense in the context of an action seeking to evict on the grounds of habitual late payment of rent. Id. at 38-39, 898 A.2d 1036.
Most importantly, in Mollett we reaffirmed our holding in Abutidze, noting "we have not recognized a `general equitable defense' to an eviction action for habitual late payment," although we have "recognized the role of equitable considerations in dispossess cases." Id. at 39, 898 A.2d 1036 (quoting Abutidze, 371 N.J.Super. at 118, 852 A.2d 217). And, while we cited to the particular hardships the tenant faced if evicted, we noted that "[t]he crux of the case was a dispute with the landlord over the day of the month on which [the tenant's] rent was due. She was willing to pay her rent." Id. at 40, 898 A.2d 1036.
Clearly, a tenant cannot be habitually late in the payment of her rent if there is a disagreement about whether the rent is in fact late, or if the premises are uninhabitable, thus permitting the tenant's withholding of the rent. Such a dispute *794 requires resolution through the fact finding process, something that never occurred in Mollett. To the extent we recognized the inequity of the situation in Mollett, our concern was more about the process employed by the landlord and accepted by the trial judge, than it was about the idiosyncratic hardships faced by the tenant. Id. at 38, 898 A.2d 1036 (rejecting trial judge's "conclusion" that landlord's "demand[s]" were pursuant to a "typical landlord-tenant arrangement"). In this case, however, it was undisputed that the rent was due on the first of each month, that defendant had a ten-day grace period before the rent was "late," that the premises were in good repair, and that defendant paid her rent late on two occasions after receipt of the notice to cease.
To resolve this case, we need not revisit the specific issue of whether a tenant may advance equitable defenses to an action brought pursuant to N.J.S.A. 2A:18-61.1(j), e.g., why she paid her rent late or the hardship the eviction would cause. Rather, we strive to determine the Legislature's intent in forbidding an eviction unless a tenant has, after receipt of a notice to cease, "habitually and without legal justification failed to pay rent. . . ." Ibid.
"Our analysis . . . begins with the plain language of the statute[,]" DiProspero v. Penn, 183 N.J. 477, 493, 874 A.2d 1039 (2005), which "is ordinarily the `surest indicator' of [the Legislature's] intent." Frugis v. Bracigliano, 177 N.J. 250, 280, 827 A.2d 1040 (2003) (quoting Cornblatt P.A. v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998)). "It is not the function of [a] [c]ourt to `rewrite a plainly-written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language.'" DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 (quoting O'Connell v. State, 171 N.J. 484, 488, 795 A.2d 857 (2002)). "Throughout, our analysis is informed by the injunction that `words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.'" In re Liquidation of Integrity Ins. Co., 193 N.J. 86, 94, 935 A.2d 1184 (2007) (alteration in original) (quoting Soto v. Scaringelli, 189 N.J. 558, 570-71, 917 A.2d 734 (2007) (in turn quoting N.J.S.A. 1:1-1)). Thus, a court should not look beyond the plain language of the statute and resort to extrinsic sources to divine legislative intent when "the statutory language is clear and unambiguous, and susceptible to only one interpretation. . . ." DiProspero, supra, 183 N.J. at 492, 874 A.2d 1039 (internal quotations and citations omitted).
"Habitual" is defined as "customary, usual." Black's Law Dictionary 640 (5th ed. 1979). Our Rules of Evidence also provide guidance as to the plain meaning of "habit." N.J.R.E. 406(b) permits the proof of "habit or routine practice if evidence of a sufficient number of such instances is offered to support a finding of such habit or routine practice." "A habit. . . is the person's regular practice of responding to a particular kind of situation with a specific type of conduct." Sharpe v. Bestop, Inc., 158 N.J. 329, 330, 730 A.2d 285 (1999) (quoting State v. Radziwil, 235 N.J.Super. 557, 564, 563 A.2d 856 (App. Div.1989), aff'd o.b., 121 N.J. 527, 582 A.2d 1003 (1990)). As used in N.J.S.A. 2A:18-61.1(j), the Court has said that whether conduct is "`habitual' is a function of time and circumstances." A.P. Dev. Corp., supra, 113 N.J. at 496, 550 A.2d 1220.
*795 Applying these basic principles, we conclude that plaintiff failed to demonstrate that defendant had, after receipt of the notice to cease, "habitually" paid her rent in an untimely fashion. The notice to cease was served on defendant on or about January 21, 2009. Thereafter, she paid her rent in a timely fashion in nine of the next eleven months prior to the December 15, 2009 trial.[4] Defendant paid her rent late in June (eight days after the grace period), and in August (two days after the grace period), i.e., she was late by a total of ten days during the eleven-month period. The statute "requires a continuing course of conduct by the tenant over a period of time. . . ." A.P. Dev. Corp., supra, 113 N.J. at 498, 550 A.2d 1220. We cannot conclude on these facts that after the notice to cease was served, defendant was "habitually" late in her rental payments.
We add a note of caution lest our holding in this case be misconstrued. In A.P. Dev. Corp., supra, 113 N.J. at 496, 550 A.2d 1220, the Court rejected the tenants' argument that the landlord's failure to act sooner after service of the notice to cease amounted to an estoppel, rendering the subsequent notice to quit ineffective. The Court reasoned that "[t]o apply a strict time limitation rule will result in unfairness in certain instances[,]" denying the tenant the opportunity to "change [her] pattern of late payments of rent[,]" or "forc[ing] a landlord to institute an eviction action against a tenant sooner than he or she would have. . . ." Ibid. Thus, we infer that each case requires a fact-sensitive inquiry into the tenant's conduct after receipt of the notice to cease. A "continuing course of conduct by the tenant" may arise immediately after the notice to cease is served, indeed within the first few months. Similarly, after the passage of several months subsequent to service of the notice to cease, a "continuing course of conduct" may arise by repeated late payments without legal justification. We do not foreclose the possibility that in the specific circumstances presented, two late rental payments after the service of a notice to cease would amount to "habitual" late payment, thus, giving the landlord a cause of action under N.J.S.A. 2A:18-61.1(j). In each case, the trial judge must assess the evidence as to the "time and circumstances" of the late payments to determine whether a cause of action for eviction has been proven. In this case, it was not.
Reversed.
NOTES
[1] Judge Carchman did not participate in oral argument. However, the parties consented to his participation in the decision.
[2] Plaintiff also testified that defendant paid her rent late in September and October 2008.
[3] Tower Mgmt. was decided six months before A.P. Dev. Corp. and was cited with approval by the Supreme Court. A.P. Dev. Corp., supra, 113 N.J. at 496, 550 A.2d 1220.
[4] At trial, plaintiff acknowledged that it refused to accept defendant's payments after November 1, 2009, because the notice to quit had been served. However, defendant had made timely payments to her attorney's trust account in November and December, and these monies were paid over to plaintiff pursuant to the consent order for a stay pending appeal. In her brief, defendant asserts that she paid her rent in a timely fashion from January to April 2010, thereafter vacating the premises. We consider the payments made in a timely fashion in November and December 2009 because that information was before the trial judge at the time he made his decision. We attach no significance, however, to the payments defendant made thereafter pursuant to the consensual stay the parties negotiated.