**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2548-23

IRMA RAMIREZ,

    Plaintiff-Respondent,

v.

DARIA ORTIZ,

    Defendant-Appellant.

_____

Argued March 27, 2025 – Decided April 4, 2025

Before Judges Natali and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. LT-001658-24.

Valentina T. Kuzman argued the cause for appellant (Essex-Newark Legal Services, attorneys; Valentina T. Kuzman and Felipe Chavana, on the briefs).

Jonathan J. Mincis argued the cause for respondent (Bastarrika, Soto, Gonzalez and Somohano, LLP, attorneys; Franklin G. Soto, on the brief).

PER CURIAM

In this landlord-tenant action based on non-payment of rent, defendant Daria Ortiz appeals from the March 12, 2024 judgment for possession and April 2, 2024 order for orderly removal.

Defendant's rent was paid in full by the New Jersey Department of Community Affairs (DCA) through its emergency COVID-19 rental relief program for fourteen months from October 2020 through December 2021. During that same period, defendant made duplicate rent payments to plaintiff Irma Ramirez[1] totaling at least $13,700. Plaintiff accepted both the DCA payments and defendant's duplicate rent payments.

Plaintiff alleged there was unpaid rent in the amount of $12,000 for the period August 2023 through March 2024. Defendant contended she was not in default because plaintiff owed her a credit for the duplicate payments in an amount greater than the alleged unpaid rent. Because defendant's duplicate rent payments exceeded the amount of unpaid rent allegedly due, the court incorrectly entered the judgment for possession. Accordingly, we reverse.

We summarize the facts adduced during the March 12, 2024 trial. On October 1, 2020, defendant and plaintiff entered a written residential lease for premises located on the first floor of 189 First Avenue in Newark for the

---

[1] At the time, plaintiff was known as Irma Melendez.

effective period September 1, 2020, to September 1, 2021. The monthly rent was $1,200. The written lease was not renewed, and defendant remained in the apartment as a month-to-month tenant. Plaintiff contended the monthly rent was later increased through an oral agreement to $1,500 per month. Defendant claimed her rent was $1,200 per month and never increased.

In 2020, defendant applied for emergency COVID-19 rental assistance from the DCA. In connection with that application, plaintiff created a lease indicating defendant's monthly rent was $1,500.[2] Defendant never signed that lease. Having not heard from the DCA regarding her application, defendant continued to pay her rent at the rate of $1,200 per month.

Unbeknownst to defendant, in November 2022, plaintiff received a check from the DCA in the amount of $21,000. It is undisputed the $21,000 the DCA paid plaintiff represented the full amount of defendant's purported $1,500 monthly rent for the fourteen-month period October 2020 through December 2021. In July 2023, defendant contacted the DCA and learned plaintiff received and cashed the check from the DCA in November 2022. Defendant stopped paying rent after July 2023 because she contended plaintiff owed her a credit for the duplicate payments.

---

[2] The lease plaintiff created for the DCA is not included in the record on appeal.

A-2548-23

There is no dispute defendant stopped paying rent as of August 1, 2023. On December 31, 2023, plaintiff wrote to defendant that her rent for the period August 1, 2023, through December 31, 2023, was past due, and demanded she vacate the apartment. Plaintiff did not allege any amounts unpaid prior to August 1, 2023.

On January 25, 2024, plaintiff filed her complaint in this action. The complaint alleged unpaid rent in the total amount of $9,000, representing $1,500 per month for the months of August 2023 through January 2024.[3] The complaint did not allege any amounts due prior to August 2023. At the time of trial, plaintiff alleged unpaid rent in the total amount of $12,000 for the eight-month period August 2023 through March 2024. Again, plaintiff did not allege any unpaid rent prior to August 2023.

At trial, the court reviewed defendant's proof of payments she made for the months paid by the DCA. Defendant proved she made rent payments to plaintiff for the same months paid by the DCA in the total amount of at least $13,700. These included payments of $1,200 in October, November, and

---

[3] Plaintiff also sought late fees in the amount of $50 per month. There is no dispute she was not entitled to recover such fees under the written lease or during the subsequent month-to-month tenancy.

A-2548-23

December 2020, and February, March, April, May, June, July, August, and September 2021. She made a payment of at least $500 in January 2021.[4]

The court concluded plaintiff was not permitted to retain the duplicate payments and owed defendant a credit for those payments. Instead of applying the duplicate payments to the $12,000 plaintiff alleged was due and owing, the court required defendant to prove she made rent payments for the period January 2022 through July 2023. The court stated it was "going to add up all of [defendant's] rent and subtract all [her] payments, giv[ing her] credit for what [she's] paid here. That[ is] how [the court is] going to determine this."

Defendant was not prepared to provide evidence of payments she made between December 2021 and August 2023 because there was never any allegation of amounts unpaid prior to August 2023, and that was not the period during which she claimed she made the duplicate payments. Defendant told the court she "just thought that [she] had to prove the months that the DCA program paid, which was not 2022, they paid 2020 and 2021." Defendant argued, plaintiff is "saying . . . [defendant] d[oes not] owe her for 2022. She[ is] claiming [defendant] owe[s] her from 2023."

---

[4] Defendant testified she paid the full $1,200 but only had proof of an electronic transfer in the amount of $500. Defendant contended she may have paid the remainder in cash.

A-2548-23

The court determined defendant was able to prove she made payments in the total amount of $49,600, including the $21,000 received from the DCA, over the course of a period of forty-eight months.[5]  It accepted defendant's contention her rent was $1,200 per month and calculated the amount due as follows: "$1,200 times [forty-eight] is $57,600.  Okay, that[ is] at $1,200.  So [$]57,600 minus payments of $49,600, is $8,000."  Based on that analysis, the court entered "[j]udgment of possession in the amount of $8,000" because "that[ is] the least amount of money [defendant] could owe . . . accepting rent at $1,200 a month."

On appeal, defendant contends the court's assumption of the burden of proof and its reliance solely on defendant's records demonstrated it was not impartial.  Also the court's finding that defendant owed $8,000 in rent lacks any basis in fact.

Our review of a judgment entered following a bench trial is very limited.  We apply a deferential standard of review.  D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013).  When the trial judge acts as the fact finder in a bench trial, we "must accept the factual findings of" that trial judge, when such findings "are 'supported by sufficient credible evidence in the record.'"  State v. Mohammed,

_____

[5]  The court mistakenly used a period of forty-eight months beginning January 2020.  In fact, defendant's tenancy lasted only forty-three months from September 2020 through March 2024.

6

226 N.J. 71, 88 (2016) (quoting State v. Gamble, 218 N.J. 412, 424 (2014)). We will "'not disturb the factual findings and legal conclusions of the trial judge' unless convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Griepenburg v. Twp. of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"[A] summary dispossess action does not permit either a landlord or tenant to plead a claim for damages." Raji v. Saucedo, 461 N.J. Super. 166, 170 (App. Div. 2019); see also Green v. Morgan Props., 215 N.J. 431, 449 (2013) (recognizing "no money judgment can be awarded in the Landlord/Tenant Part"). The "only judgment" entered in a "summary dispossess proceeding is a judgment for possession of the premises," though "part of the court's findings [may] include the amount of rent . . . that is due and owing," thereby "fix[ing] the amount that the tenant may . . . pay . . . in order to prevent the eviction from taking place." Green, 215 N.J. at 449 (citing R. 6:3-4(c)); see also Hous. Auth. of Morristown v. Little, 135 N.J. 274, 280 (1994) (stating "[t]he only remedy that can be granted in a summary-dispossess proceeding is possession; no money damages may be awarded").

7

"By confining itself to the landlord's right to possession, and fixing of the amount of rent due to afford the tenant the opportunity to avoid eviction by its payment, the statutory summary dispossess device provides a quick disposition of the landlord's claim for possession." Raji, 461 N.J. Super. at 170 (citation omitted); see also Green, 215 N.J. at 447 (finding a purpose of the Anti-Eviction Act, N.J.S.A. 2A:18-61.1, was to "protect[ ] landlords by providing an efficient and inexpensive way to evict a tenant and regain possession of the leased premises when appropriate").

In a summary-dispossess action based on non-payment of rent, the claimed amount of unpaid rent must be "legally owing." Hous. Auth. of Passaic v. Torres, 143 N.J. Super. 231, 236 (App. Div. 1976). "[T]he failure to establish the amount claimed is due require[s] dismissal of plaintiff's complaint for possession." Montgomery Gateway E. I v. Herrera, 261 N.J. Super. 235, 240 (App. Div. 1992).

We conclude the court incorrectly determined plaintiff proved she was entitled to a judgment for possession based on non-payment of rent as alleged in the complaint. The court was presented with the following issues: (1) whether plaintiff proved defendant failed to pay rent for the period August 2023 through March 2024; (2) if so, the amount of unpaid rent during that period; (3)

A-2548-23

whether defendant was entitled to a credit for duplicate payments made for the period October 2020 through December 2021 when the DCA paid at least the full amount of her rent; and (4) if so, whether the amount of the credit for duplicate payments exceeded the amount plaintiff proved as unpaid rent.

It was undisputed defendant made her last rent payment in July 2023 and stopped paying rent as of August 1, 2023. Assuming defendant's rent was $1,500 as alleged, plaintiff proved defendant owed at most unpaid rent in the amount of $12,000 for the period August 1, 2023, through March 2024, as alleged in the complaint.

However, defendant proved she made duplicate rent payments in the amount of at least $13,700 for the months plaintiff was paid by the DCA. Because defendant was entitled to a credit in an amount greater than the unpaid rent alleged in the complaint, the court was required to dismiss the complaint. See Montgomery Gateway, 261 N.J. Super. at 240.

By considering the rent due during periods of time for which plaintiff did not allege unpaid rent and then reducing that amount by the rent payments defendant was able to prove at trial, the court effectively found unpaid rent during the period January 2022 through July 2023, despite the fact plaintiff never alleged unpaid rent prior to August 2023. The court mistakenly expanded

A-2548-23

its analysis to periods outside those alleged in the complaint.  Moreover, the court incorrectly based its calculations on a forty-eight-month tenancy when defendant only resided in the apartment for forty-three months.  That resulted in a calculation error in plaintiff's favor in the amount of $6,000.

We need not reach the dispute over the alleged oral agreement to increase defendant's rent from $1,200 to $1,500.  However, we note, although the court initially indicated it intended to find defendant's rent was increased to $1,500 at some point based on the unsigned lease plaintiff created for the DCA and the fact the DCA paid $1,500 per month, the judgment of possession was entered based on a monthly rent of $1,200.  In the event of future litigation between the parties regarding rent payments, defendant is not precluded from arguing her rent was $1,200 for the entirety of the tenancy.

To the extent we have not specifically addressed any remaining arguments, including defendant's argument related to the court's impartiality, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2548-23