NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0891-24

NC ROSEVILLE SENIOR
2016 UR LLC,

      Plaintiff-Appellant,

v.

DOROTHY HOWARD,

      Defendant-Respondent.

_____

<table>
<tr><td>

**APPROVED FOR PUBLICATION**

**January 12, 2026**

**APPELLATE DIVISION**

</td></tr>
</table>

      Submitted December 9, 2025 – Decided January 12, 2026

      Before Judges Sumners, Susswein and Chase.

      On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. LT-010566-24.

      Lindsay R. Baretz, LLC, attorney for appellant (Lindsay R. Baretz, of counsel and on the briefs).

      Essex-Newark Legal Services, attorneys for respondent (Anthony D. Kershaw and Felipe Chavana, on the brief).

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

Plaintiff-landlord NC Roseville Senior 2016 UR LLC (Roseville) appeals the October 24, 2024 Special Civil Part order dismissing with prejudice its eviction complaint against defendant-tenant Dorothy Howard for failure to pay rent. Judge Damian Santomauro issued a comprehensive and thoughtful written opinion, holding that by executing a renewal lease with defendant and by accepting the first three rent payments in the new term, plaintiff waived its right to evict defendant for her prior nonpayment of rent, applying the rule of law set forth in Montgomery Gateway E. I v. Herrera, 261 N.J. Super. 235 (App. Div. 1992). After reviewing the record in light of the governing law, we affirm substantially for the reasons set forth in Judge Santomauro's cogent written opinion.

I.

We discern the following facts and procedural history from the record. Since at least 2021, defendant has resided in an apartment unit in a Section 8 project-based subsidized housing complex in Newark owned by plaintiff. Under the Section 8 program, a tenant pays rent in a reduced amount based on their monthly income, and the remainder of the contract rent is subsidized by a public housing agency (PHA), pursuant to an agreement between the PHA and the owner of the housing complex. See 42 U.S.C. §§ 1437a(a)(1), 1437f.

In March 2023, plaintiff and defendant entered a written lease agreement for the March 2023-February 2024 lease term (2023-24 term), with a monthly rent of $280. By the conclusion of the 2023-24 term, defendant was several months behind on rent. On February 27, 2024, plaintiff and defendant signed a new lease for the March 2024-February 2025 term (2024-25 term), with a monthly rent of $288. On March 14, defendant made, and plaintiff accepted, a payment of $355. On April 16, defendant made, and plaintiff accepted, a payment of $288. On April 17, plaintiff mailed defendant a notice of termination for nonpayment of rent, alleging a balance due of $1,222.63.[1] On May 22, defendant made, and plaintiff accepted a payment of $300.

On June 19, plaintiff filed an eviction complaint against defendant based on her nonpayment of rent in the 2023-24 term. The complaint alleged that defendant owed $736.35, consisting of: (1) $17.35 for April 2023; (2) $560.00 for July and August 2023; (3) $22.00 for June 2023; (4) $80.00 for November 2023 through February 2024; and (5) a $57.00 filing fee.

On July 30, the parties appeared for trial. Defendant sought to dismiss the complaint for failure to state a claim on the ground that plaintiff, by entering into a new lease and accepting rent, waived its right to evict the tenant

---

[1] It appears this stated balance does not reflect the April 16 payment, which brought the balance down to $934.63.

A-0891-24

for nonpayment of rent as a matter of law. Judge Santomauro adjourned the trial to allow the parties to brief the issue. After receiving the parties' briefs, the judge scheduled oral argument for August 26. At the request of plaintiff's counsel, the argument was adjourned to August 27. At the conclusion of the argument, the judge asked for additional briefing on the limited issue of whether plaintiff was compelled by law to renew its lease with defendant.

On October 24, Judge Santomauro dismissed plaintiff's complaint with prejudice, issuing a 54-page opinion. This appeal follows. Plaintiff raises the following contentions for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED BY PERMITTING DEFENDANT TO MAKE A MOTION TO DISMISS ORALLY ON THE DAY OF TRIAL. (NOT RAISED BELOW).
>
> POINT II
>
> DEFENDANT'S MOTION WAS MADE PURSUANT TO R. 4:6-2(E), AS SUCH, THE TRIAL COURT ERRED BY FAILING TO APPLY THE PROPER LEGAL STANDARD. (UNABLE TO RAISE BELOW).
>
> POINT III
>
> TO THE EXTENT THE TRIAL COURT TREATED DEFENDANT'S MOTION AS A MOTION FOR SUMMARY JUDGMENT PURSUANT TO R[ULE] 4:46-2, THE TRIAL COURT FAILED TO PROPERLY ADVISE THE PARTIES. (UNABLE TO RAISE BELOW).

POINT IV

THE TRIAL COURT ERRED IN FAILING TO CONSIDER THAT [DEFENDANT] CAME TO COURT WITH UNCLEAN HANDS. (RAISED BELOW).

POINT V

THE COURT ERRED IN FINDING THAT THE RENEWAL OF A LEASE AND THE ACCEPTANCE OF RENT IS PER SE WAIVER. (RAISED BELOW).

A. Waiver is an Issue of Intent.

B. Waiver Cannot be Found Based on a Mistake of Fact.

C. The Trial Court Erred in Holding that the Beginning of a New Lease Relived [Defendant] of her Obligation to Pay Past Due Rent.

D. The Trial Court Should Have Considered How Court Closures and the COVID-19 Pandemic Affected the Relationship of the Parties.

POINT VI

THE TRIAL COURT ERRED IN FAILING TO CONSIDER THAT N.J.S.A. 52:27D-287.9(A) AFFECTED THE ORDER IN WHICH PAYMENTS ARE APPLIED AND, THEREFORE AFFECTED THE APPLICATION OF MONTGOMERY GATEWAY. (RAISED BELOW).

POINT VII

THE TRIAL COURT ERRED IN FAILING TO CONSIDER HOW LOW-INCOME HOUSING TAX CREDIT REGULATIONS MAY AFFECT

[PLAINTIFF]'S OBLIGATIONS. (RAISED BELOW).

POINT VIII

THE TRIAL COURT ERRED IN FINDING THAT LANDLORDS IN SUBSIDIZED HOUSING CAN WAIVE DEBT OWED BY TENANTS FOR THEIR PORTION OF THE RENT. (RAISED BELOW).

Plaintiff raises the following additional arguments in its reply brief:

POINT I

[DEFENDANT]'S ARGUMENT THAT THE DECISION BELOW IS BASED ON "LONG-STANDING JUDICIAL PRECEDENT" IS WITHOUT MERIT AND IS INTENTIONALLY MISLEADING.

POINT II

[DEFENDANT]'S ARGUMENT THAT PLAINTIFF IS OFFERING A "NEW CENTRAL ARGUMENT" ON APPEAL IS WITHOUT MERIT.

POINT III

[DEFENDANT]'S ASSERTION THAT [DEFENDANT]'S CALCULATED PLOY AND VIOLATION OF COURT RULES SHOULD BE REWARDED IS WITHOUT MERIT.

II.

We first address plaintiff's procedural contentions, starting with its assertion that the trial judge erred by allowing defendant to orally move to dismiss the complaint for the first time at trial. Plaintiff contends that the motion violated Rule 1:6-2(a), as well as the broader prohibition against "trial

by ambush." See Plaza 12 Assocs. v. Carteret Borough, 280 N.J. Super. 471, 477 (App. Div. 1995).

A trial court's decision to allow an oral motion is discretionary, and we therefore review it for abuse of discretion. See Enourato v. N.J. Building Auth., 182 N.J. Super. 58, 65 (App. Div. 1981), aff'd 90 N.J. 396 (1982) (determining that the trial court properly "exercised its discretion" in allowing an oral motion to dismiss under Rule 1:6-2). Cf. R. 1:6-2(a) ("A motion, other than one made during a trial or hearing, shall be by notice of motion in writing unless the court permits it to be made orally.") (emphasis added); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:6-2(a) (2026) ("It is virtually axiomatic that, except as to defaulting parties, oral motions made during trial, and if a rule expressly otherwise provides, all motions must be on notice to the adverse party.") (emphasis added). Furthermore, because this issue was not raised below, we review it for plain error. See R. 2:10-2 (Under the plain error standard, we disregard any such error unless "clearly capable of producing an unjust result.").

We see no abuse of discretion in allowing defendant to make an oral motion on the day trial was scheduled; and in any event, plaintiff was not prejudiced because Judge Santomauro allowed the parties to thoroughly brief and argue the relevant issues over the ensuing month and a half. We likewise

A-0891-24

are unpersuaded by plaintiff's argument that defendant's motion at trial subjected it to "trial by ambush." Unlike in Plaza 12 Assocs., 280 N.J. Super. at 477, where one party's surprise motion at trial "preclude[d]" the other party "from presenting its case," here, Judge Santomauro gave plaintiff ample opportunity to respond to defendant's motion, including two rounds of supplemental briefing and an additional day of oral argument.

Plaintiff also takes issue with the judge's decision to adjourn the August 26 oral argument to the following afternoon. Plaintiff claims it was prejudiced by having to send substitute counsel to the August 27 oral argument. However, plaintiff had requested the adjournment and had an opportunity to make additional arguments in its briefs before and after the August 27 oral argument. We therefore reject plaintiff's claims of impropriety and prejudice.

Nor are we persuaded by plaintiff's contention that the trial court erred by treating defendant's motion as one for summary judgment without giving the parties an opportunity to present additional factual evidence. See R. 4:6-2 ("If, on a motion to dismiss . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46, and all parties shall be given reasonable notice of the court's intention to treat the motion as one for summary judgment and a reasonable opportunity to present all material

A-0891-24

pertinent to such motion."). The gravamen of plaintiff's argument is that the judge effectively converted defendant's motion to dismiss for failure to state a claim into a motion for summary judgment because the judge considered certain exhibits plaintiff attached to its opposition brief.[2] It is well-established, however, that a court may consider documents "specifically referenced in the complaint" without thereby converting a motion to dismiss into one for summary judgment. Myska v. New Jersey Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015). Further, "[i]n evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005) (quoting Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir.), cert. denied, 543 U.S. 918 (2004)).

In this instance, the lease, publicly available documents, and the legal materials the judge considered were either attached to the complaint or matters of public record. There is no indication in the record that the judge

---

[2] Specifically, plaintiff refers to: (1) the lease, which was attached to the complaint; (2) two publicly available documents from government agencies; (3) the File Audit and Physical Inspection Report plaintiff submitted to the New Jersey Housing and Mortgage Finance Agency in 2023; (4) an unpublished Appellate Division opinion; and (5) an excerpt from a legal treatise.

A-0891-24

considered, for example, the audit and inspection report in reaching its decision. We are satisfied that the judge did not convert the motion to one for summary judgment, and, therefore, no advisement or opportunity to present additional materials was required.

We likewise reject plaintiff's contention that defendant's motion violated the doctrine of "unclean hands." That doctrine "gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." Faustin v. Lewis, 85 N.J. 507, 511 (1981). Plaintiff argues that, because defendant made payments toward rent arrears in March and May 2024 (and thereby "acknowledged" the debt to plaintiff), she came to the court with unclean hands and should not have been allowed to secure a waiver of plaintiff's right to evict based on those past arrears. Defendant's efforts to avoid eviction while simultaneously making payments toward the arrears simply do not constitute the sort of wrongdoing contemplated by the unclean hands doctrine. As a result, the trial court did not abuse its discretion in dismissing plaintiff's complaint. Cf. Heuer v. Heuer, 152 N.J. 226, 238 (1998) (the doctrine of unclean hands is "discretionary on the part of the court").

A-0891-24

## III.

Turning to plaintiff's substantive contentions, we address the central issue:  whether the trial judge erred in concluding that plaintiff's eviction action is barred under the waiver rule established in Montgomery Gateway. We review de novo a trial court's decision on a motion to dismiss for failure to state a claim.  Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021).

## A.

We begin our analysis by unequivocally stating that the rule and rationale of Montgomery Gateway remains good law.

Prior to Montgomery Gateway, our courts generally held that whether a landlord has waived its right to evict is, "except in unusual circumstances, an issue of fact."  Jasontown Apartments v. Lynch, 155 N.J. Super. 254, 261 (App. Div. 1978).  "Receipt of . . . [rent] payments after the initiation of statutory dispossess proceedings provides only evidence of a waiver which should be considered together with all other existing circumstances in determining whether the defense of waiver has been sustained."  Id. at 262-63 (emphasis added).  This is because "waiver always rests on intent, and is ever a question of fact."  Id. at 262 (internal quotation marks and citation omitted); see also Knorr v. Smeal, 178 N.J. 169, 177 (2003) ("Waiver is the voluntary and intentional relinquishment of a known right.").

A-0891-24

In Montgomery Gateway, we carved out a specific exception to this fact-specific intent inquiry, holding that when a landlord renews a tenant's lease and accepts rent under that new lease, it waives its right to terminate the tenancy based on the tenant's prior nonpayment of rent. 261 N.J. Super. at 240. While acknowledging that the acceptance of rent, standing alone, would only be "evidence" of waiver, we held that as a matter of law,

> the granting of a new lease and acceptance of rent in that new term is so inconsistent with an intention to require a surrender of possession of the premises as to amount to an election to waive the right to terminate the tenancy because of the past rent defaults.

[Ibid.]

We stress that, so far as we are aware, no published case has questioned the validity of Montgomery Gateway, much less reversed it. Indeed, the most recent published decision that cites to it, Matthew G. Carter Apartments v. Richardson, 417 N.J. Super. 60 (App. Div. 2010), confirmed the validity of the Montgomery Gateway waiver rule by distinguishing it. In that case, the plaintiff-landlord executed a new lease with the defendant-tenant after she had made a few late rent payments in the previous term—although not enough to constitute "habitual late payment" giving rise to an eviction action. Id. at 65-67. We held that the new lease did not operate to waive the plaintiff's eviction rights because, unlike in Montgomery Gateway, at the time the new lease was

A-0891-24

executed, "[the] [p]laintiff's cause of action for habitual late payment of rent had not accrued" and it therefore "possessed no cause of action to waive." Id. at 68. We therefore concluded that "[t]his case is . . . entirely distinguishable from the facts presented in [Montgomery Gateway]." Id. at 67-68. See also Ivy Hill Park, Section III, Inc. v. Abutidze, 371 N.J. Super. 103, 115 (App. Div. 2004) (citing Montgomery Gateway for the proposition that "[i]n some circumstances, acceptance of rent may operate as a waiver of a breach of the lease and thereby prevent eviction").

There would be no need to factually distinguish Montgomery Gateway if its essential holding had been abrogated, and we are therefore satisfied that its rule and rationale remain good law.

B.

The next question, aptly posed by Judge Santomauro in his written opinion, is whether the Montgomery Gateway rule applies in this case. The judge began his analysis by noting that

> the circumstances here appear facially the same as those present in Montgomery Gateway. Both cases involve: (1) a Section 8 tenant; (2) the tenant's default under a lease agreement by failing to pay all rent due and owing; (3) the landlord and tenant executing a new lease agreement notwithstanding the tenant's default for non-payment under the prior lease agreement; (4) the tenant making, and the landlord accepting, all rent payments under the new lease agreement; and (5) the landlord seeking to evict the

> tenant pursuant to the [Anti-Eviction] Act, N.J.S.A. 2A:18-61.1(a), for non-payment of rent under the prior lease agreement.

Plaintiff nonetheless argued before the trial court that its renewal of the lease and acceptance of rent could not have operated as a waiver of its eviction right because the lease renewal was compelled by federal law—in particular, various statutes and regulations related to the Section 8 program. Because it had no choice but to renew the lease, plaintiff claimed, doing so was not "so inconsistent with an intention to require a surrender of possession of the premises" as to amount to a waiver of the right to evict defendant.

In response to that argument, Judge Santomauro conducted an exhaustive review of the federal law, regulations, and guidelines plaintiff relied upon and found that none of them compelled plaintiff to renew its lease with defendant. We agree entirely with Judge Santomauro's painstaking analysis of the lease agreement itself and the federal law governing Section 8 subsidized housing.[3]

---

[3] The trial court also determined that, in addition to federal law, nothing in New Jersey law compelled plaintiff to renew its lease with defendant. We note plaintiff does not challenge that determination on appeal. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) ("An issue not briefed on appeal is deemed waived.").

14

As Judge Santomauro correctly emphasized, plaintiff's lease with defendant (a HUD model lease[4]), explicitly contemplates that plaintiff may decline to execute a renewal lease at the end of the term. The lease provides in pertinent part:

> The initial term of this Agreement shall begin on March 01, 2024 and end on February 28, 2025. After the initial term ends, the Agreement will continue for successive terms of one month each unless automatically terminated as permitted by paragraph 23 of this Agreement.

This language makes clear that plaintiff was not compelled by the lease terms to execute a renewal lease with defendant and could instead have allowed the tenancy to continue on a month-to-month basis, which would have preserved plaintiff's right to seek eviction for prior nonpayment of rent. See Montgomery Gateway, 261 N.J. Super. at 241 (noting that a landlord may avoid the waiver rule by "refusing to enter into a renewal lease and treating the tenant as a holdover while attempting to work out the problem of the past due rent").

---

[4] The record indicates that plaintiff and defendant used the HUD Model Lease for the 2021-22 term, renewed that lease in March 2022 and March 2023, and again renewed (using the HUD Model Lease) in February 2024. Thus, while the record does not include copies of the 2022-23 or 2023-24 leases, it appears they were also HUD Model Leases.

Furthermore, the lease expressly allows plaintiff to terminate the tenancy if defendant fails to pay rent:

> 23. Termination of Tenancy
>
> . . . .
>
> c. The Landlord may terminate this Agreement for the following reasons:
>
> > (1) the Tenant's material noncompliance with the terms of this Agreement;
>
> . . . .
>
> d. . . . The term material noncompliance with the lease includes . . .
>
> . . . .
>
> > (4) [n]on-payment of rent or any other financial obligation due under the lease beyond any grace period permitted under State law.

Because defendant missed multiple rent payments in the 2023-24 term, the lease authorized plaintiff to terminate the tenancy entirely, meaning plaintiff was <u>not</u> required either to renew the lease or continue the tenancy on a month-to-month basis. In these circumstances, we agree with Judge Santomauro that the lease did not compel plaintiff to renew for another term.

Nor did federal law or regulations require plaintiff to renew the lease. Specifically, federal statutory law, federal regulations, and the HUD

16

A-0891-24

Handbook, U.S. Dep't of Hous. & Urb. Dev., HUD Handbook No. 4350.3, Occupancy Requirements of Subsidized Multifamily Housing Programs (rev. Nov. 2013) [hereinafter HUD Handbook], all make clear that plaintiff had the ability to terminate defendant's tenancy or allow the lease to become a month-to-month tenancy.

42 U.S.C. § 1437f(d)(1)(B) states that contracts between a PHA and the owner of existing Section 8 housing units shall require that:

> i. the lease between the tenant and the owner shall be for at least one year or the term of such contract, whichever is shorter, and shall contain other terms and conditions specified by the Secretary;

> ii. during the term of the lease, the owner shall not terminate the tenancy except for serious or repeated violation of the terms and conditions of the lease, for violation of applicable Federal, State, or local law, or for other good cause.

Nowhere does this statute require a landlord to renew its lease with a tenant. Furthermore, the statute expressly allows a landlord to terminate a tenancy for a serious or repeated violation, which includes nonpayment of rent. See 24 C.F.R. § 982.310(a)(1) (providing that a landlord may terminate a Section 8 tenancy based on a "[s]erious violation (including but not limited to failure to pay rent or other amounts due under the lease)").

Additionally, the HUD Handbook confirms that plaintiff had the right to terminate the lease. HUD Handbook, § 8-13(A)(5) ("Owners may terminate

17

A-0891-24

tenancy when a tenant is in material noncompliance with the lease including . . . Nonpayment of rent due under the lease."); see also § 8-12(C), Figure 8-2 (clarifying that "the allowable circumstances when an owner may terminate tenancy, either during or at the end of the lease term," include "nonpayment of rent").

## C.

We next apply the lease provisions and federal legal principles to the present facts. Here, defendant fell several months behind on rent during the 2023-24 term. As a result, in February 2024, plaintiff had the right—under federal law and the express terms of the lease—to terminate defendant's tenancy for nonpayment of rent or allow it to convert to a month-to-month tenancy. Neither of those options would have triggered the Montgomery Gateway waiver rule. Instead, however, plaintiff opted to execute a lease renewal with defendant for the 2024-25 term and subsequently accept all rent payments under that new lease. In these circumstances, the Montgomery Gateway rule applies.

## D.

Plaintiff also challenges the judge's dismissal order on the basis of N.J.S.A. 52:27D-287.9(a), which provides:

> Notwithstanding any other law to the contrary, no residential tenant of a very low-income household,

low-income household, moderate-income household, or middle-income household shall be evicted based upon nonpayment or habitual late payment of rent, or failure to pay a rent increase, that accrued during the covered period.[5] <u>Payments made by a tenant after the covered period ends shall be credited first to the current month's rental obligation, and any balance shall be credited to any arrearage owed by the tenant incurred following the conclusion of the covered period, and then to any arrearages incurred during the covered period.</u>

[(Emphasis added).]

In March and May of 2024, defendant made rent payments of $355 and $300, respectively, even though her monthly rent was only $288. The balance of these overpayments went towards defendant's arrearages from the prior term. Plaintiff argues that the trial court "failed to consider how this [statute] affects [plaintiff's] pleadings," and also suggests that this statute distinguishes the present matter from the facts in <u>Montgomery Gateway</u>, as the tenant in that case appears to have paid her exact rent each month.

We are not persuaded that the distinction plaintiff draws makes a difference under the <u>Montgomery Gateway</u> rule. The fact that defendant paid toward arrearages from the prior term does not change the fact that plaintiff renewed the lease and accepted rent payments toward the new term.

---

[5] The covered period is March 1, 2020 to August 31, 2021. N.J.S.A. 52:27D-287.8.

Nor are we persuaded by plaintiff's contention that the waiver rule should not apply because it renewed the lease in order to preserve its Low-Income Housing Tax Credit. See 26 U.S.C. § 42 (describing the tax credit and eligibility requirements). More specifically, because a housing unit will not count toward the credit if it is being used on a "transient basis," 26 U.S.C. § 42(i)(3)(B), plaintiff argues it needs "current leases" in order to prove that it is not using its units for transient purposes. Therefore, plaintiff argues, it renewed its lease with defendant in order to demonstrate non-transient use and thereby preserve its tax credit.

We have no reason to doubt plaintiff's assertion regarding its underlying motivations for renewing defendant's lease, but those motivations do not matter for purposes of applying the waiver rule. We presume that a for-profit owner of rental property makes business decisions regarding that property based on a host of economic considerations, and that for such businesses, the bottom line is, literally, the bottom line. We conclude that any incentives associated with the Low-Income Housing Tax Credit have no bearing on the rationale that undergirds the Montgomery Gateway waiver rule.

E.

We conclude our discussion of the Mongomery Gateway rule by noting that, on appeal, plaintiff offers a modified version of the argument it presented

20

A-0891-24

to the trial judge:  plaintiff now contends that even if renewal was not actually required by law, plaintiff <u>reasonably believed</u> it was compelled to renew the lease, and in those circumstances, executing the new lease and accepting rent was not "so inconsistent with an intention" to evict defendant as to amount to a waiver.  <u>Montgomery Gateway</u>, 261 N.J. Super. at 240.

We are unpersuaded by this novel argument.  We are not convinced that the rationale undergirding the <u>Montgomery Gateway</u> waiver rule depends on what a landlord "reasonably believes."  But even assuming for the sake of argument that a landlord's subjective belief matters, we conclude that plaintiff's claimed belief that it had no choice but to renew its lease with defendant is not reasonable in light of the federal statutory law, regulations, the HUD Handbook, and the terms of the lease itself, as we explained in subsection B.

To the extent we have not specifically addressed them, any remaining contentions raised by plaintiff lack sufficient merit to warrant discussion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0891-24